## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Stacey L. Schmader, Leticia O'Dell, Chad Nicholson, Kai Huschke, Markie Miller, Malinda Clatterbuck, Michelle Sanborn, Crystal Jankowski, | : : : : : : : : | No. 1:20-cv-00067-JPW |
| Plaintiffs, | : : : | |
| v. | : : : | |
| Thomas Alan Linzey, in his Individual and Official Capacities; Tammy Belinsky, in her Individual and Office Capacities; Fred Walls, in his Individual and Official Capacities; Edward Wells, in his Individual and Official Capacities; Community Environmental Legal Defense Fund and the Center for Democratic and Environmental Rights, | : : : : : : : : : : : : : | |
| Defendants. | : | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

*January 16, 2020*

***On the Brief:***

**KAUFMAN DOLOWICH & VOLUCK, LLP**
Christopher J. Tellner, Esq.
Gregory F. Brown, Esq.
*Attorney for Defendants*
*Tammy Belinsky, Fred Walls,*
*Edward Wells and Community Environmental Legal Defense Fund*

**JACKSON LEWIS P.C.**
Eileen K. Keefe, Esq.
Kristin L. Witherell, Esq. (*Pro hac vice to follow*)
1601 Cherry Street
Suite 1350
Philadelphia, PA 19102
*Attorneys for Thomas Alan Linzey, in his Official Capacity*

**WEINHEIMER HABER & COCO P.C.**
Bethann R. Lloyd, Esq.
Law & Finance Building
4th Ave. Suite 602
Pittsburgh, PA 15219
*Attorneys for Thomas Alan Linzey, in his Individual Capacity, and Center for Democratic and Environmental Rights*

# **TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ................................................................ 1

II.   PROCEDURAL HISTORY ................................................. 3

III.  FACTUAL STATEMENT .................................................. 3

IV.   QUESTIONS INVOLVED .................................................. 4

V.    LEGAL ARGUMENT ........................................................ 6

      A.    Standard for Granting this Motion to Dismiss .................. 6

      B.    Plaintiffs do not Have Standing as an Aggrieved Party under Section 5793(a) of the Nonprofit Corporation Law. ........................................ 7

      C.    Plaintiffs' Breach of Fiduciary Duty Claim Should be Dismissed for Lack of Standing ................................................................ 9

      D.    Plaintiffs' Complaint Against Defendants Belinsky, Wells and Walls Must be Dismissed Under Rule 12(b)(6) Because They Cannot be Sued in their Individual Capacities. .................................................. 12

      E.    Plaintiffs' Unjust Enrichment Claim Must be Dismissed Under Rule 12(b)(6) Because Plaintiffs do not set Forth Facts to Support the Claim, and Under Rule 12(b)(1) Because the Claim is not Ripe for Adjudication. ................................................................ 16

            1.    Elements of an Unjust Enrichment Claim ................ 17

            2.    Plaintiffs' unjust enrichment claim must be dismissed under Rule 12(b)(1) because it is not ripe. .......................... 23

      F.    Plaintiffs' Civil Conspiracy Claim Must be Dismissed Because, Under Pennsylvania Law, Agents of a Single Entity Cannot Conspire Among Themselves. ................................................................ 25

i

G.    Plaintiff's RICO Claim Should be Dismissed. ...................................... 29

    1.    Plaintiffs do not have standing to bring a civil RICO claim. ... 29

    2.    Plaintiffs failed to plead facts showing that they suffered a "concrete financial loss" as a result of Mr. Linzey's alleged threats. ................................................................................... 31

    3.    Plaintiffs have not alleged a RICO claim for wire fraud. ........ 32

H.    Plaintiffs' Demand for Monetary Damages Must be Dismissed. ...... 34

    1.    Plaintiffs' demand for compensatory damages is not supported by the Complaint's factual averments and is also not ripe for adjudication. ........................................................................... 34

    2.    Plaintiffs' demand for exemplary or punitive damages is not supported by Plaintiffs' factual averments. .............................. 35

VI.    CONCLUSION ............................................................................................. 37

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

Abbott Labs. v. Gardner,
    387 U.S. 136 (1967),...................................................................... 24

Anza v. Ideal Steel Supply Corp.,
    547 U.S. 451 (2006).................................................................... 32

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)............................................................ 6, 7, 29

Askew v. Trs. of the Gen. Assembly of the Church of the
    Lord Jesus Christ of the Apostolic Faith, Inc.,
    644 F. Supp. 2d 584, 589 (E.D. Pa. 2009) .............................. 8, 10, 11

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)....................................................................... 6, 7

Black v. Bank of Am.,
    30 Cal. App. 4th 1, 6 (1994) ......................................................... 27

Burnside v. Abbott Labs.,
    505 A.2d 973 (Pa. Super. Ct. 1985)............................................... 25

Buschi v. Kirven,
    775 F.2d 1240 (4th Cir. 1985) ...................................................... 26

Califano v. Sanders,
    430 U.S. 99 (1977)........................................................................ 24

Carlson v. Fawn Ridge Estates Homeowners' Ass'n,
    2012 Pa. Commw. Unpub. LEXIS 267 (Apr. 17, 2012) ................. 11

Constitution Party of Pa. v. Aichele,
    757 F.3d 347 (3d Cir. 2014).......................................................... 23

Copperweld Corp. v. Indep. Tube Corp.,
    467 U.S. 752 (1984)...................................................................... 26

Davis v. Wells Fargo,
    824 F.3d 333 (3d Cir. 2016).......................................................... 23

Doe v. County of Centre,
    242 F.3d 437 (3d Cir. 2001).......................................................... 24

Dombrowski v. Dowling,
    459 F.2d 190 (7th Cir. 1972) ........................................................ 27

Ethypharm S.A. France v. Abbott Labs.,
    707 F.3d 223 (3d Cir. 2013)............................................................ 7

Feld v. Merriam,
    485 A.2d 742 (Pa. 1984) .................................................................. 36
Feleccia v. Lackawanna Coll.,
    156 A.3d 1200 (Pa. Super. Ct. 2017) ................................................ 36
Fondrk v. Westmoreland Cty.,
    2006 U.S. Dist. LEXIS 41286 (W.D. Pa. June 16, 2006) ................. 7, 8
G.J.D. v. Johnson,
    713 A.2d 1127 (Pa. 1998) ................................................................ 35
Geyer v. Steinbronn,
    506 A.2d 901 (Pa. Super. Ct. 1986) .................................................. 35
Goudy-Bachman v. United States HHS,
    764 F. Supp. 2d 684 (M.D. Pa. 2011) ............................................... 24
Gould Elecs., Inc. v. United States,
    220 F.3d 169 (3d Cir. 2000) ............................................................. 23
Graden v. Conexant Systems, Inc.,
    496 F.3d 291 (3d Cir. 2007) ............................................................... 8
Hemi Group, LLC v. City of New York, N.Y.,
    559 U.S. 1 (2010) ............................................................................. 32
Hilliard v. Ferguson,
    30 F.3d 649 (5th Cir. 1994) ............................................................. 26
Holmes v. Sec. Investor Prot. Corp.,
    503 U.S. 258 (1992) ......................................................................... 30
Hull v. Cuyahoga Valley Jt. Vocat'l Sch. Dist. Bd. of Educ.,
    926 F.2d 505 (6th Cir. 1991) ........................................................... 26
Hutchinson v. Luddy,
    870 A.2d 766 (Pa. 2005) .................................................................. 35
In re Croatian Fraternal Union Scholarship Foundation, Inc.,
    Docket No. 562 WDA 2012,
    2013 Pa. Super. Unpub. LEXIS 1148 (Mar. 19, 2013). ....................... 9
In re Ins. Brokerage Antitrust Litig.,
    618 F.3d 300 (3d Cir. 2010) ............................................................. 29
In re Milton Hershey Sch.,
    911 A.2d 1258 (Pa. 2006) ............................................................... 8, 9
Kyle-Labell v. Selective Serv. Sys.,
    364 F. Supp. 3d 394 (D.N.J. 2019) ................................................... 23
Magnum v. Archdiocese of Philadelphia,
    253 F. App'x 224 (3d Cir. 2007) ....................................................... 30

Maio v. Aetna, Inc.,
   221 F.3d 472 (3d Cir. 2000)............................................................. 30, 31
Malleus v. George,
   641 F.3d 560 (3d Cir. 2011)....................................................................... 7
Miller v. Burt,
   765 F. App'x 834 (3d Cir. 2019) .............................................................. 32
NE Hub Partners, L.P. v. CNG Transmission Corp.,
   239 F.3d 333 (3d Cir. 2001)..................................................................... 23
Phillips v. Cricket Lighters,
   883 A.2d 439 (Pa. 2005) .......................................................................... 35
Pittsburgh Live Inc. v. Servol,
   615 A.2d 438 (Pa. Super. Ct. 1992) ......................................................... 36
Rutherfoord v. Presbyterian-University Hosp.,
   612 A.2d 500 (Pa. Super. Ct. 1992) ........................................... 26, 27, 28
Sedima, S.P.R.I. v. Imrex Co.,
   473 U.S. 479 (1985)................................................................................. 32
Smith v. Brown,
   423 A.2d 743 (Pa. Super. Ct. 1980) ......................................................... 36
Spuhler v. Mass. Mut. Life Ins. Co.,
   134 A.3d 89 (Pa. Super. Ct. 2015)........................................................... 17
St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.,
   No. 18-2157, 2019 U.S. Dist. LEXIS 156308 (E.D. Pa. Sep. 12, 2019)....... 31, 32
Steele v. Hosp. Corp. of Am.,
   36 F.3d 69 (9th Cir. 1994) ....................................................................... 30
Thompson Coal Co. v. Pike Coal Co.,
   412 A.2d 466 (Pa. 1979). ................................................................... 25, 26
Trotman v. Mecchella,
   618 A.2d 982 (Pa. Super. Ct. 1992). .................................................. 35, 36
United Mine Workers of Amer. v. Gibbs,
   383 U.S. 715 (1966).................................................................................. 8
Walter v. Palisades Collection, LLC,
   480 F. Supp. 2d 797 (E.D. Pa. 2007) .................................................. 29, 33
Wells v. Thomas,
   569 F. Supp. 426 (E.D. Pa. 1983) ............................................................ 27

**Statutes**

15 Pa. Cons. Stat. Ann. §§ 5101 – 5998 .................................................... 8
15 Pa. Cons. Stat. Ann. § 5103 .......................................................... 10, 11
15 Pa. Cons. Stat. Ann. § 5712 ............................................................ 9, 10

15 Pa. Cons. Stat. Ann. § 5717 ..................................................... 10, 11, 12
15 Pa. Cons. Stat. Ann. § 5770 ......................................................... 10
15 Pa. Cons. Stat. Ann. § 5782 ..................................................... 8, 11, 12

## Other Authorities

18 U.S.C. §§ 1961-1968.......................................................... 29, 30, 31, 32

## Rules

Federal Rule of Civil Procedure 12(b)(1) ...................................... 1, 2, 5, 16, 17, 23
Federal Rule of Civil Procedure 12(b)(6) ............................... 1, 2, 5, 6, 7, 12, 16, 23

Defendants Thomas Alan Linzey ("Mr. Linzey"), Tammy Belinsky, Fred Walls, and Edward Wells (collectively Ms. Belinsky, Mr. Walls and Mr. Wells are referred to as "Board Members"), Community Environmental Legal Defense Fund ("CELDF") and the Center for Democratic and Environmental Rights ("CDER"), by and through their counsel, hereby file this Memorandum of Law in support of the Motion to Dismiss Plaintiffs' Complaint.[1]

## I.    INTRODUCTION

Plaintiffs  purport to exemplify altruism, yet their Complaint amounts to nothing more than vindictive mudslinging at their contemporaries and colleagues by disgruntled workers, going so far as to assert false and inflammatory accusations against respected leaders of a time-honored nonprofit organization originally endowed to promote human and environmental rights.  Far from their purported humane mission, Plaintiffs have resorted to manufacturing legal claims against their own employer, their own Board Members, and their own Executive Director. Plaintiffs have gone so far as to allege that Defendants engaged in a civil conspiracy and violated federal anti-racketeering statutes simply because Plaintiffs disagree with decisions made by the Board of the organization for whom they work.

What Plaintiffs fail to bring to light before the Court is that their self-serving conduct is what precipitated the lawful actions of Defendants.  Because Plaintiffs

---

[1] A true and correct copy of the Complaint and its Exhibits is attached as Exhibit A.

placed their own self-motives before that of the organization to which they serve, they have found themselves in a situation of their own creation. Due to Plaintiffs' self-serving conduct, Defendant Board Members properly and lawfully voted to wind up CELDF so that the parties could start afresh with a new organization, without Plaintiffs poisonous duplicity fouling the very waters Defendants serve to protect.

None of Plaintiffs' claims are legally cognizable. Overall, Plaintiffs lack standing to bring this suit under Pennsylvania's Nonprofit Corporation Law because they are not an "aggrieved party." Plaintiffs similarly lack standing to assert their breach of fiduciary duty claim because they are not "members" of CELDF. Defendant Board Members cannot be sued in their individual capacities under Pennsylvania's Nonprofit Corporation Law. Plaintiffs' unjust enrichment claim fails for want of cause and, because no actual damages have occurred, such a claim is not ripe for adjudication.

Plaintiffs' crime-based claims should be dismissed on several grounds. In Pennsylvania, agents of a single entity cannot be held liable for conspiring among themselves, as a matter of law. Plaintiffs lack standing to bring a civil RICO claim, and that claim should be dismissed because Plaintiffs cannot articulate a concrete financial loss. Further, despite feeble attempts to do so, Plaintiffs have not and articulated and cannot articulate a claim for wire fraud.

Finally, all of Plaintiffs' claims for monetary damages must be dismissed. Altruistic indeed – Plaintiffs demand for compensatory, punitive and exemplary damages belie the very nature of this lawsuit. They did not file suit to "save CELDF." They filed suit for money. Regardless, Plaintiffs have not stated any cognizable claims for money damages because, in part, Plaintiffs cannot articulate that they suffered any damages.

Defendants respectfully request the Court to grant this Motion to Dismiss and not permit Plaintiffs any opportunities to amend the Complaint because any such amendment would be futile.

## II.    PROCEDURAL HISTORY

Plaintiffs filed the Complaint in the Court of Common Pleas of Franklin County, Pennsylvania on December 12, 2019. Plaintiffs served the Complaint first on Defendant Thomas Alan Linzey ("Mr. Linzey") on December 16, 2019. Defendants timely removed the lawsuit to this Court on January 13, 2020. Defendants now timely move to dismiss the Complaint in its entirety and with prejudice.

## III.   FACTUAL STATEMENT

Without admitting any of the factual allegations asserted by Plaintiffs, Defendants generally incorporate, by reference only, the allegations of the Complaint, solely for purposes of adjudicating this Motion to Dismiss.

The most important fact necessary to adjudicate this Motion to Dismiss is that nothing has occurred. Despite their scurrilous allegations, no funds of CELDF have been depleted. No money has exchanged hands. None of the Plaintiffs have been fired. No CELDF contractor contracts have been terminated. No dissolution has taken place.

Rather, Plaintiffs are simply complaining that the organization which pays them has duly and lawfully voted to closing shop and beginning anew without Plaintiffs. The allegations of the Complaint amount to nothing more than speculative complaining about differences of opinion on the future direction of the organization. Rather than focus their efforts on striving to serve CELDF, Plaintiffs instead have elected to further damage CELDF. This lawsuit is yet another self-motivated step taken by Plaintiffs.

Despite such, none of the allegations asserted by Plaintiffs amount to any legally cognizable claims.

## IV.   QUESTIONS INVOLVED

1.     Whether Plaintiffs' Complaint should be dismissed entirely because Plaintiffs do not have standing as an aggrieved party under Section 5793(a) of the Nonprofit Corporation Law.

*Suggested Answer: Yes.*

2.      Whether Plaintiffs' breach of fiduciary duty claim should be dismissed for lack of standing.

**_Suggested Answer: Yes._**

3.      Whether Plaintiffs' Complaint against Defendants Belinsky, Wells and Walls should be dismissed under Rule 12(b)(6) because they cannot be sued in their individual capacities.

**_Suggested Answer: Yes._**

4.      Whether Plaintiffs' unjust enrichment claim should be dismissed under Rule 12(b)(6) because Plaintiffs do not set forth facts to support the claim.

**_Suggested Answer: Yes._**

5.      Whether Plaintiffs' unjust enrichment claim should be dismissed under Rule 12(b)(1) because the claim is not ripe for adjudication.

**_Suggested Answer: Yes._**

6.      Whether Plaintiffs' civil conspiracy claim should be dismissed because, under Pennsylvania law, agents of a single entity cannot conspire among themselves.

**_Suggested Answer: Yes._**

7.      Whether Plaintiffs' RICO claim should be dismissed for lack of standing.

**_Suggested Answer: Yes._**

8.      Whether Plaintiffs' RICO claim should be dismissed for lack of a concrete financial loss.

*Suggested Answer: Yes.*

9.      Whether Plaintiffs' RICO claim should be dismissed because Plaintiffs have not alleged a RICO claim for wire fraud.

*Suggested Answer: Yes.*

10.     Whether Plaintiffs' demand for compensatory damages should be dismissed because there are no supporting factual averments nor are damages ripe for adjudication.

*Suggested Answer: Yes.*

11.     Whether Plaintiffs' demand for exemplary or punitive damages should be dismissed because the demand is not supported by Plaintiffs' factual averments.

*Suggested Answer: Yes.*

## V.    LEGAL ARGUMENT

### A.    Standard for Granting this Motion to Dismiss

The legal standard for granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Iqbal, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To

6

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly within the Third Circuit, the analysis of whether allegations in a complaint can survive a Rule 12(b)(6) motion to dismiss is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

When applying the foregoing, it is abundantly clear that Plaintiffs' Complaint is legally deficient, and there are no scenarios under which Plaintiffs could amend to state facially plausible claims.

**B.    Plaintiffs do not Have Standing as an Aggrieved Party under Section 5793(a) of the Nonprofit Corporation Law.**

When exercising supplemental jurisdiction, a federal court "must apply state law to state claims." Fondrk v. Westmoreland Cty., 2006 U.S. Dist. LEXIS 41286,

at *8 (W.D. Pa. June 16, 2006)[2] (citing <u>United Mine Workers of Amer. v. Gibbs</u>, 383 U.S. 715 (1966)). In Pennsylvania, the question of whether a party has standing to sue relative to a non-profit corporation's decision is governed by Pennsylvania's Nonprofit Corporation Law of 1988, 15 Pa. Cons. Stat. Ann. §§ 5101 – 5998 ("Nonprofit Corporation Law").  <u>See</u> <u>Askew v. Trs. of the Gen. Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.</u>, 644 F. Supp. 2d 584, 589 (E.D. Pa. 2009) (citing 15 15 Pa. Cons. Stat. Ann. § 5782). "Determining whether a particular individual has 'statutory standing is simply statutory interpretation: the question it asks is whether [the legislature] has accorded <u>this</u> injured plaintiff the right to sue the defendant to redress his injury.'" <u>Id.</u> (citing <u>Graden v. Conexant Systems, Inc.</u>, 496 F.3d 291, 295 (3d Cir. 2007) (emphasis in original)).

The identity of those legally capable of challenging a corporate action are set forth in Section 5793(a) of the Nonprofit Corporation Law:

> ***General   rule.*** — Upon   application   of   any   person aggrieved by any corporate action, the court may hear and determine the validity of the corporate action.

Standing requires a showing that the litigant is aggrieved, in that the litigant is "negatively affected by the matter he seeks to challenge" and has "a substantial, direct, and immediate interest in the outcome of the litigation." <u>In re Milton Hershey</u>

---

[2] A true and correct copies of unpublished opinions are attached as Exhibit B.

Sch., 911 A.2d 1258, 1261-62 (Pa. 2006); see also In re Croatian Fraternal Union

Scholarship Foundation, Inc., Docket No. 562 WDA 2012, 2013 Pa. Super. Unpub.

LEXIS 1148, at *10-11 (Mar. 19, 2013).

Plaintiffs in this case cannot make the requisite showing. Plaintiffs allege

merely that: "As current employees of CELDF, Plaintiff[s] face direct pecuniary

injury from the *prospective* dissolution and winding up of their employer and thus

have standing to challenge corporate actions." (Ex. A ¶ 86.) (Emphasis added.)

Plaintiffs, who are undisputedly at-will employees and contractors, have not alleged

direct harm as a result of the dissolution vote. Indeed, the Complaint is devoid of

any allegation that the employees are not currently working or that any contractor

contracts were improperly terminated. Accordingly, this matter should be dismissed

because the litigants lack standing to proceed.

### C. Plaintiffs' Breach of Fiduciary Duty Claim Should be Dismissed for Lack of Standing.

In Count I, Plaintiffs allege, in their respective individual capacities, a

violation of the Nonprofit Corporation Law, § 5712. (Ex. A ¶¶ 90-140.) More

specifically, Plaintiffs allege that "Defendants Board members, as individuals and

as CELDF's Board of Directors, willfully violated their fiduciary duties to

reasonably protect the interests of CELDF by acting at the behest of an officer with

interests opposed to CELDF." (Ex. A, Count I Heading.) Plaintiffs, again, lack the

requisite standing to present this claim.

Pursuant to the Nonprofit Corporation Law, standing is limited as follows:

> <u>The duty of the board of directors, committees of the board</u> <u>and individual directors</u> under section 5712 (relating to standard of care and justifiable reliance) <u>is solely to the</u> <u>nonprofit corporation</u> and may be enforced directly by the corporation or may be enforced by a member, as such, by an action in the right of the corporation, <u>and may not be</u> <u>enforced directly by a member or by any other person or</u> <u>group.</u>

15 Pa. Cons. Stat. Ann. § 5717 (emphasis added).

Nonprofit Corporation Law § 5103 defines "Members" as any of the following:

(1)   A person that has voting rights in a membership corporation.

(2)   When used in relation to the taking of corporate action by a membership corporation, a delegate to a convention or assembly of delegates of members established pursuant to any provision of this subpart who has the right to vote at the convention or assembly in accordance with the rules of the convention or assembly.

(3)   A person that has been given voting rights or other membership rights in a membership corporation by a bylaw adopted by the members pursuant to section 5770 (relating to voting powers and other rights of certain securityholders and other entities) or other provision of law, but only to the extent of those rights.

The statutes at issue are not ambiguous. See <u>Askew</u>, 644 F. Supp. 2d at 589.

"Under the Nonprofit Corporation Law, claims for director and officer breach of

duty may be brought only by the corporation itself or in a derivative action on behalf

10

of the corporation." <u>Carlson v. Fawn Ridge Estates Homeowners' Ass'n</u>, 2012 Pa. Commw. Unpub. LEXIS 267, at *10 (Apr. 17, 2012)(citing 15 Pa. Cons. Stat. Ann. §§ 5717, 5782). The failure of a nonprofit corporation's directors and officers "to satisfy their duties of loyalty and care owed to the nonprofit corporation injures only that corporation. Any right to redress belongs to the Corporation and enforcement of such a right is a classic derivative claim." <u>Askew</u>, 644 F. Supp. 2d at 589-90 (applying § 5717 and dismissing breach of fiduciary duty claim for lack of standing).

As § 5717 provides, however, a claim asserting a violation of the board of directors' duties may only "be enforced directly by the corporation or . . . <u>by a member,</u> as such, by an action in the right of the corporation." (emphasis added). <u>See also</u> 15 Pa. Cons. Stat. Ann. § 5782 (providing that "<u>in any action or proceeding brought to enforce a secondary right</u> on the part of one or more members of a nonprofit corporation <u>against any present or former officer, director or member of an other body of the corporation</u> because the corporation refuses to enforce rights that may properly be asserted by it, <u>each plaintiff must aver and it must be made to appear that each plaintiff was a member of the corporation at the time of the transaction of which he complains.</u>) (emphasis added). Importantly, the Nonprofit Corporation Law defines a "Member" as "a person that has voting rights in a membership corporation." 15 Pa. Cons. Stat. Ann. § 5103.

Here, Count I is derivative in nature, as it alleges a breach of fiduciary duty to the corporation by its Director and Board Members.  Any alleged failure by these Defendants to satisfy their purported duties owed to the nonprofit corporation would injure only CELDF.  As Plaintiffs do not "ha[ve] voting rights in [CELDF]," they are not members of CELDF, and as a result, they lack standing to redress those claims under Nonprofit Corporation Law § 5717 and § 5782.

### D. Plaintiffs' Complaint Against Defendants Belinsky, Wells and Walls Must be Dismissed Under Rule 12(b)(6) Because They Cannot be Sued in their Individual Capacities.

Plaintiffs set forth a cause of action against Board Members Belinsky, Wells and Walls[3] under the Nonprofit Corporation Law.  Under the Nonprofit Corporation Law, board members are not subject to personal liability for acts performed in their official capacity if the corporation's bylaws provide as much:

> (a)  *General rule.* — If a bylaw adopted by the members of a nonprofit corporation so provides, a director shall not be personally liable, as such, for monetary damages for any action taken unless:
>
>> (1)  the director has breached or failed to perform the duties of his office under this subchapter; and
>>
>> (2)  the breach or failure to perform constitutes self- dealing, willful misconduct or recklessness.

---

[3] The Complaint alleges that Belinsky, Wells and Walls were the only CELDF Board Members during the events in question.  (See Ex. A ¶ 43.)

Id. § 5713.

In this case, CELDF's Bylaws provide that Board Members shall not be held personally liable for any action they take:

> Liability and Indemnification
>
> The Members of the Board of Directors, the Officers, and the members of the Board of Advisors shall not be personally liable for monetary damages for any action taken, or any failure to take action, to the fullest extent permitted by law. The Corporation shall indemnify any member of the Board of Directors or Board of Advisors or Officer of the Corporation, as such, to the fullest extent permitted by law.

(Ex. A at Ex B, Art. IV.)

Thus, under the Nonprofit Corporation Law, the Board Members cannot be held personally liable for the alleged acts or omissions attributed to them in the Complaint unless Plaintiffs establish that they breached their duties set forth under the Act and that the particular breaches constituted "self-dealing, willful misconduct, or recklessness." The Complaint firmly establishes that the alleged acts or omission of the Board Members do not satisfy this formidable standard. Therefore, the Board Members cannot be held personally liable for any of the acts attributed to them in the Complaint.

In the Complaint, Plaintiffs allege the Board took three specific actions that allegedly qualify as self-dealing, intentional misconduct, or recklessness. (Id. ¶ 90.) First, Plaintiffs allege the Board voted to pass a resolution that attempted to fire

13

CELDF's Organizing Team in retaliation for attempting to meet with Mr. Linzey and to present staff grievances to him. (Id. ¶¶ 90, 95.) Second, Plaintiffs allege the Board voted to pass a resolution to provide Mr. Linzey with a severance agreement. (Id. ¶ 90.) Third, Plaintiffs allege the Board voted to pass a resolution to dissolve CELDF. (Id. ¶ 90.)

At the outset, there is no conceivable basis to conclude the Complaint alleges "self-dealing" by the Board Members. There is no contention that any individual Board Member sought to further their own personal purposes by taking any of the actions. Thus, Plaintiffs have not articulated any allegations to demonstrate self-dealing.

Nor do Plaintiffs' allegations against the Board Members qualify as intentional misconduct or recklessness. The Complaint clearly establishes the lawful rationale of the Board Members in voting to reach an amicable agreement with Mr. Linzey and to dissolve CELDF. (Id. ¶ 109.) Indeed, the Complaint directly quotes the November 22, 2019 Board Statement:

> Since May 2019, a significant portion of the staff have worked to defeat efforts by the Board to reach an agreement with departing co-founder Thomas Linzey. Such an agreement would have allowed for an amicable departure and continued operation of CELDF. The Board considered the cost of such an agreement the cost of goodwill. Without that agreement, there is no goodwill and it is the Board's belief that CELDF simply cannot survive its consequences. Combined with the other organizational and management issues, it is the Board's

> conclusion that dissolution of CELDF and the
> reinvigoration of the CRN's is in the best interest of the
> organization.

(Id. ¶ 109.)

In other words, based on the plain factual allegations of the Complaint alone, the Board's decision to dismiss CELDF staff, to reach a satisfactory agreement with Mr. Linzey, and to dissolve CELDF was neither misconduct nor recklessness. Rather, the steps voted upon were necessary to continue the mission of CELDF through the individual Community Rights Networks. The Board Members' actions were consistent with the purpose of CELDF stated in its bylaws:

> The purposes of the corporation are exclusively charitable
> and educational, and shall include, but not be limited to,
> the provision of legal and other services to community
> organizations and municipal governments otherwise
> unable to afford services equivalent to those provided by
> the corporation.

(Ex. B. Art I, § 2.)

Thus, under the facts alleged in the Complaint, the Board took its action to further CELDF's objectives despite the obstacles it faced due to the dispute among Plaintiffs and Mr. Linzey. Such measures are not acts of intentional misconduct or recklessness, but rather are part and parcel of the responsibility of a Board of Directors to make major decisions on the direction of an organization, including whether to terminate it. There are simply no facts set forth in the Complaint to support Plaintiffs' allegation that the Board Members' conduct rose to the level of

self-dealing, intentional misconduct, or recklessness. Any remaining doubt as to the character of the Board's actions is dispelled by the Complaint itself, which, affirmatively pleads that the Board Members' vote to dissolve CELDF was done in their capacities as Board members.[4]   Accordingly, the Board Members cannot be sued in their individual capacities, and Plaintiffs' causes of action against them must be dismissed to the extent they implicate the Board Members' personal liability.

### E.   Plaintiffs' Unjust Enrichment Claim Must be Dismissed Under Rule 12(b)(6) Because Plaintiffs do not set Forth Facts to Support the Claim, and Under Rule 12(b)(1) Because the Claim is not Ripe for Adjudication.

At Count Four of their Complaint, Plaintiffs set forth a claim of unjust enrichment. Plaintiffs generally allege that "upon information and belief, Defendant Linzey has acquired or prospectively will acquire benefits in the form of cash and economic assets of CELDF for the personal benefit of himself and his estate." (Ex. A ¶ 165.) They make a similar allegation as to Mr. Linzey's prospective receipt of benefits in his capacity as an officer of the Center for Democratic and Environmental Rights. (Id. ¶ 166.) Plaintiffs' unjust enrichment claim is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs do not allege sufficient

---

[4] "On November 22, 2019, Defendants Belinsky, Walls and Wells, <u>acting in their capacities as CELDF's Board</u>, voted to formally dissolve the organization. This decision was not made in the best interests of CELDF, but was a retaliatory action made to punish staff for questioning the Board's actions." (Ex. A ¶ 76.) (emphasis added)

facts to support the cause of action, specifically a benefit conferred.  The absence of a benefit conferred also renders the claim not ripe for adjudication and subjects it to dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

### 1.    Elements of an Unjust Enrichment Claim

"To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain." Spuhler v. Mass. Mut. Life Ins. Co., 134 A.3d 89 (Pa. Super. Ct. 2015).  "A claim for unjust enrichment arises from a quasi-contract.  'A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another.'" Id.

> The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched. Moreover, the most significant element of the doctrine is whether the enrichment of the defendant is unjust.

Id. (emphasis in original).

In this case, Plaintiffs' unjust enrichment claim fails for want of its most fundamental element — a benefit conferred <u>by Plaintiffs</u> upon Defendants. To the contrary, Plaintiffs' Complaint alleges that CELDF considered conferring a *possible* benefit upon Mr. Linzey. Plaintiffs had no role in those discussions, as Plaintiffs neither offered nor gave any benefit whatsoever to any of the Defendants. On that basis alone, and similar to why Plaintiffs have demonstrated no standing to sue, the claim fails.

Further, the Complaint demonstrates that while discussions occurred, nothing of value actually changed hands between CELDF and Mr. Linzey. Indeed, the alleged benefit was merely something that Mr. Linzey allegedly pursued, and which the Board allegedly considered without further action. The plain language of the Complaint demonstrates that the conferment of a benefit to Mr. Linzey (by CELDF, not Plaintiffs) is only something that might have happened, <u>but did not</u>:

- "Defendant Linzey **pressured** the three Defendant Board members to agree to an agreement that Defendant Linzey drafted, unilaterally and arbitrarily, **promising him** a severance package that included a very high six figure payment[.]" (Ex. A ¶ 70.)

- "Defendant Linzey **threatened** that he would tell donors not to donate to CELDF should CELDF staff continue to oppose his hefty severance package." (<u>Id.</u> at ¶ 71.)

- "Linzey has also **threatened** to sue CELDF if he does not get his severance package." (<u>Id.</u> ¶ 72.)

- The Board's "hurried **attempts** to execute the severance agreement." (<u>Id.</u> ¶ 90.)

- The Board's "**attempting** to pave a path forward to convey Defendant Linzey his high six figure exit fee[.]" (Id. ¶ 92.)

- The Board "**deliberated the proposal** to convey the high six figure severance payment to Defendant Linzey for no legal or contractual reason." (Id. ¶ 97.)

- The third-party law firm's advice to have outside counsel review "Linzey's parachute **proposal**." (Id. ¶ 100.)

- The Board's actual knowledge of the "**contemplated** severance proposal." (Id. ¶ 101.)

- "Defendant Linzey drafted the severance **proposal** himself and advocated for it during Board meetings, using his position and influence as President and counsel of the organization. . . . Such a cash parachute **would** come from donations earmarked for specific purposes, misappropriating those funds **would** violate the donative intent." (Id. ¶ 102.)

- "[F]or the Board members to **entertain** a severance package that **contemplates** Defendant Linzey having a stake in the organization that he resigned from six months previously violates the Defendant Board members' fiduciary duties of loyalty to CELDF, to avoid wasting its resources." (Id. ¶ 103.)

- "Absent the objection of the CELDF staff and organizers, by way of formal letters of opposition and repeated email requests to talk through the severance proposal on the phone, the Board of Directors **would certainly have gone through with** the dubious transfer." (Id. ¶ 104.)

- "By terminating CELDF, Defendants Board members are freeing up CELDF's assets, totaling more than $2,000,000, for distribution to other IRS Section 501(c)(3) tax-exempt nonprofit corporations according to CELDF's Articles of Incorporation. . . . The top **candidate** to receive distribution of CELDF's assets is Defendant Linzey's newly-founded Sect. 501(c)(3) nonprofit, Defendant CDER." (Id. ¶¶ 112-13.)

- "Defendant Board Members violated their fiduciary duties by exposing CELDF to **potential** public embarrassment and monetary liability **by considering** the disbursement of the aforementioned amount of money to Defendant Linzey in violation of the 'excess benefit rule' applicable to § 501(c)(3) public charities under § 4958 of the Internal Revenue Code." (Id. ¶ 116.)

- "Defendant Board Members also violated their fiduciary duties by aiding and abetting the **planned** private inurement of the aforementioned money to Defendant Linzey from the general cash reserves of CELDF." (Id. ¶ 121.)

- "Defendant Board Members violated their fiduciary duties by formally resolving on behalf of CELDF to dissolve and wind up CELDF as a going concern nonprofit business operation and **creating the circumstances to unjustly enrich Defendant Linzey and/or his business interests** in a sum that may exceed proper amounts." (Id. ¶ 125.)

- "Defendant Linzey violated his duty of loyalty to CELDF by engaging in self-dealing; using his intimacy with the Board of Directors that he had appointed and his position as President as leverage to convince the Board of Directors first to pay him the high six figure amount of severance notwithstanding the fact that the Board had accepted his resignation over six months prior and then, **when this failed**, by formally acting to dissolve the organization, **leaving Defendant Linzey in position** to take over the entirety of CELDF's assets." (Id. ¶ 127.)

- "Defendant Linzey . . . **demanded that the CELDF Board give him the aforementioned lopsided severance package that would** cause the transfer of those monies to a new nonprofit organization that would duplicate the functions of CELDF, **would** subject CELDF to uncapped liability to indemnify Linzey in currently pending Pennsylvania Disciplinary Board proceedings; **would** redirect certain grant funds from CELDF related to a 'Rights of Nature' Conference to be convened in Florida in early 2020; and **would** result in giving Linzey significant pieces of office equipment. Defendant Linzey further **would** be free to immediately begin solicitation of CELDF's proprietary financial

supporters for the benefit of his new nonprofit corporation and, upon information and belief, he has begun to do so." (Id. ¶ 137.)

- "Defendant Linzey breached his fiduciary duties in October 2019 by **making an extortionate demand to approve his separation proposal**, or that he would retaliate by damaging CELDF's reputation with some of its donors. Defendant Board Members violated their fiduciary duties by not rejecting the proposal, made on those terms." (Id. ¶ 138.)

- "All Defendants acted deliberately and in concert . . . to **enable** Defendant Linzey to deplete one-half of CELDF's annual operating budget. **When they abandoned that gambit**, all Defendants then conspired . . . to enact corporate business, to terminate the existence of CELDF for false and improper reasons in order to turn substantially all of CELDF's assets over to a nonprofit organization founded and controlled by Defendant Linzey." (Id. ¶ 145.)

- "Here, Defendant Linzey **may** receive a large amount of money[.]" (Id. ¶ 148.)

- "Defendant Linzey **threatened**, if his demand for an $800,000 payment was not met, to 'take the existing funders,' 'help [Defendant Belinsky] sue the board,' and 'burn all of CELDF's existing funders.'" (Id. ¶ 156.)

- "Defendant Linzey plainly **threatened** to inflict harm upon CELDF by taking CELDF's funding and suing the organization if his demand to obtain financial gain was not met." (Id. ¶ 157.)

- "Defendant Linzey **made a threat** to inflict financial harm to CELDF if he did not receive his severance payment in the aforementioned high six figure amount." (Id. ¶ 159.)

These allegations make clear that none of the potential benefits to Mr. Linzey were conferred on him. With respect to the alleged severance payment, the Complaint repeatedly describes it as a "proposed" payment that "would" cause

21

certain results "if" it had been made. Plaintiffs remove any doubt that the severance payment was not made at paragraphs 127 and 145, in which they allege that Mr. Linzey's purported "gambit" failed, and that any plan to make the payment was abandoned. All other discussion of the severance payment appears in the context of "threats" Mr. Linzey allegedly made if he did not receive the payment.

With respect to distribution of CELDF's assets that might be made upon its yet-to-occur dissolution, the Complaint merely states that Mr. Linzey's new nonprofit organization is a "candidate" to receive the assets, and there is no allegation that the benefit was actually conferred. No such allegation exists because no such benefit was conferred.

Finally, Mr. Linzey's alleged solicitation of CELDF's financial supporters to donate to his new nonprofit organization, if it happened at all, does not constitute the transfer of a benefit from CELDF or Plaintiffs to Mr. Linzey, but from the financial supporters to the new organization. Regardless, Plaintiffs couch this allegation in terms of their "information and belief," and do not plead specific facts to the effect that Mr. Linzey solicited the donors.

In lieu of an allegation of payment of a benefit to Mr. Linzey by Plaintiffs, there cannot be unjust enrichment to Mr. Linzey as a result of his retention of the benefit without payment. Plaintiffs' unjust enrichment claim must be dismissed on its merits because Plaintiffs do not set forth a cognizable claim.

### 2. Plaintiffs' unjust enrichment claim must be dismissed under Rule 12(b)(1) because it is not ripe.

Even if Plaintiffs' allegations of a potential benefit to Mr. Linzey are accepted as true, the transfer of the benefit has not yet occurred. Consequently, Plaintiffs' unjust enrichment claim is beyond this Court's jurisdiction because it is not ripe for adjudication.

"A motion to dismiss for lack of ripeness is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1) because ripeness is a jurisdictional matter." Kyle-Labell v. Selective Serv. Sys., 364 F. Supp. 3d 394, 401 (D.N.J. 2019) (citing NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 (3d Cir. 2001)). "A party bringing a motion under Rule 12(b)(1) may assert either a "facial or factual challenge to the court's subject matter jurisdiction." Id. (citing Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)). "In a facial attack, the moving party "challenges subject matter jurisdiction without disputing the facts alleged in the complaint." Id. (quoting Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016)). A facial attack "requires the court to consider the allegations of the complaint as true." Id. "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." Id. (quoting Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014). Defendants present a facial challenge to Plaintiffs' unjust enrichment claim because

the claim is not ripe even if all of the allegations in the Complaint are accepted as true.

"Ripeness is both an Article III limitation and a prudential limitation." Goudy-Bachman v. United States HHS, 764 F. Supp. 2d 684, 692d (M.D. Pa. 2011). "The ripeness inquiry concerns 'whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" Id. "The Supreme Court has noted two fundamental considerations in the ripeness analysis: (1) 'the fitness of the issues for judicial decision,' and (2) 'the hardship to the parties of withholding court consideration.'" Id. at 692-93 (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977)). "Although, the exact point at which a matter becomes ripe is by no means expressly delineated, it is clear that a dispute is not ripe 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Id. at 693; see also Doe v. County of Centre, 242 F.3d 437, 453 (3d Cir. 2001).

In this case, Plaintiffs' unjust enrichment claim is based on "uncertain or contingent events." Indeed, the claim is presented in terms of contingencies, alleging that Mr. Linzey could receive a "prospective" benefit "if" he accepts it. (Ex. A ¶¶ 165-166.) While Plaintiffs generally allege their "information and belief"

is that Mr. Linzey received a benefit from CELDF, the only benefits described with any specificity in the Complaint are: (1) the severance payment Mr. Linzey allegedly demanded, but did not receive; (2) the possible distribution of CELDF's assets to Mr. Linzey's new nonprofit organization, which has not occurred; and (3) Mr. Linzey's alleged solicitation of CELDF's donors on behalf of his new nonprofit organization, to which there are no allegations of occurrence. As set forth in the previous subsection, even if the payment of benefits to Mr. Linzey was demanded or contemplated, the transfer of benefits has not occurred and may never occur. Consequently, Plaintiffs' unjust enrichment claim must be dismissed because the Court cannot exercise jurisdiction over the controversy.

**F.    Plaintiffs' Civil Conspiracy Claim Must be Dismissed Because, Under Pennsylvania Law, Agents of a Single Entity Cannot Conspire Among Themselves.**

"To state a cause of action for civil conspiracy under Pennsylvania law, a complaint must allege the existence of all elements necessary to such a cause of action." Burnside v. Abbott Labs., 505 A.2d 973, 980 (Pa. Super. Ct. 1985). "A cause of action for conspiracy requires that two or more persons combine or enter an agreement to commit an unlawful act or to do an otherwise lawful act by unlawful means." Id. "Proof of malice, i. e., an intent to injure, is essential in proof of a conspiracy." Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979). That "unlawful intent must [also] be absent justification." Id. "The mere fact that

two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." Id. at 473. "Furthermore, a conspiracy is not actionable until 'some overt act is done in pursuance of the common purpose or design . . . and actual legal damage results.'" Rutherfoord v. Presbyterian-University Hosp., 612 A.2d 500, 508 (Pa. Super. Ct. 1992) (citations omitted).

Importantly, for the purposes of the case at bar, under Pennsylvania law "[a] single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." Rutherfoord, 612 A.2d at 508. See also Copperweld Corp. v. Indep. Tube Corp., 467 U.S. 752, 769 (1984) (holding "officers or employees of the same firm do not provide the plurality of actors imperative for a . . . conspiracy."); Hull v. Cuyahoga Valley Jt. Vocat'l Sch. Dist. Bd. of Educ., 926 F.2d 505, 510 (6th Cir. 1991) (holding "[s]ince all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy."); Hilliard v. Ferguson, 30 F.3d 649, 653 (5th Cir. 1994) ("[T]he [Hull] court held that, as all were members of the same collective entity, the conspiracy did not involve two or more people. Three district court cases in this Circuit have reached the same conclusion. We do as well."); Buschi v. Kirven, 775 F.2d 1240, 1251 (4th Cir. 1985) (concluding there was no conspiracy because the "officers or employees of the same firm do not provide the plurality of actors imperative for a .

. . conspiracy."); Dombrowski v. Dowling, 459 F.2d 190, 196 (7th Cir. 1972) (holding "the fact that two or more agents participated in the decision or in the act itself will normally not constitute [a] conspiracy."); Black v. Bank of Am., 30 Cal. App. 4th 1, 6 (1994) (holding that "[a] corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.").

The court in Rutherfoord cites to Wells v. Thomas, 569 F. Supp. 426 (E.D. Pa. 1983) as an example of this proposition. In Wells, the plaintiff worked at the Hospital of the University of Pennsylvania ("HUP"). See id. at 428. Plaintiff's employment was terminated. See id. at 429. Plaintiff subsequently filed suit, bringing several claims against her former employer and several superiors. See id. at 428. One such claim was a civil conspiracy claim, alleging a conspiracy to injure plaintiff's contractual relations with HUP. See id. at 434. In granting the defendants' summary judgment motion on this issue, the Court explained that plaintiff's civil conspiracy claim was "inapplicable here since the combination of persons who would have conspired to interfere with plaintiff's . . . business relationships were all employees of HUP. As such, defendants are agents of a single corporation who cannot conspire among themselves." Id. at 436.

Similarly, in Rutherfoord, the plaintiff was employed by Presbyterian-University Hospital ("Hospital"). Rutherfoord, 612 A.2d at 501. At the time of

plaintiff's employment, the Medical and Health Care Division of the University of Pittsburgh ("MHCD") and the Hospital were parties to a management services agreement. See id. It was undisputed that at all relevant times pertinent to the lawsuit, MHCD was acting as the lawful agent of the Hospital. See id. Defendant Ronald Forsythe ("Forsythe") was a Vice President of MHCD and the individual responsible for carrying out MHCD's management services contract with the Hospital. See id. Plaintiff was called to Forsythe's office, at which time Forsythe informed him that his employment with the Hospital was terminated immediately. See id. at 501-2.

Plaintiff filed suit, bringing several claims, including a claim for civil conspiracy. See id. at 502. Forsythe submitted a preliminary objection to this claim, in the nature of a demurrer, and the trial court sustained the objection. See id. The Superior Court affirmed, holding that "both Forsythe and MHCD [were] agents of the Hospital. A single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." Id. at 508.

In this case, Plaintiffs plead that "[t]he acts of Defendants Board members constitute the conspiracy" and "[t]he meetings of the Board are the basis of the conspiracy; therefore, the requirements of an agreement and unlawful acts are met." (Ex. A ¶ 146.) The meetings of the Board Members are analogous to the communications: (a) between the employees of HUP, who terminated the plaintiff in Wells, and (b) the decisionmakers in Rutherfoord, who were agents of the same

28

hospital. In both of those cases, the civil conspiracy claims failed because the defendants were agents of a single entity, who could not conspire among themselves as a matter of law.[5] Here, the Board members are all agents of CELDF and thus cannot conspire among themselves. Plaintiffs have therefore failed to "state[] a plausible claim for relief," and their civil conspiracy claim cannot "survive[] a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

### G.   Plaintiff's RICO Claim Should be Dismissed.

#### 1.   Plaintiffs do not have standing to bring a civil RICO claim.

The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO") "makes it unlawful 'for any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)). RICO liability is expanded by making it "unlawful for any person to conspire to violate [18 U.S.C. § 1962(c)]." 18 U.S.C. § 1962(d).

"To have standing under RICO, (1) a plaintiff's 'business or property' must have been 'injured' (2) 'by reason of' the defendant's RICO violation." Walter v.

---

[5] Here, Plaintiffs' claim is even more attenuated, as there is no allegation that Defendants' goal was to illegally terminate Plaintiffs' employment. Rather, Plaintiffs claim that the goal of the alleged conspiracy was dissolution of CELDF.

Palisades Collection, LLC, 480 F. Supp. 2d 797, 803-04 (E.D. Pa. 2007) (quoting 18 U.S.C. § 1964(c) and Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992)). See also Magnum v. Archdiocese of Philadelphia, 253 F. App'x 224, 227 (3d Cir. 2007) ("A plaintiff alleging a civil RICO violation under either § 1962(c) or (d) must plead a cognizable injury to 'business or property' under § 1964(c)").

"[S]ection 1964(c)'s limitation of RICO standing to persons 'injured in [their] business or property' has a 'restrictive significance, . . . which helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff.'" Maio v. Aetna, 221 F.3d 472, 483 (3d Cir. 2000) (quoting Steele v. Hosp. Corp. of Am., 36 F.3d 69, 70 (9th Cir. 1994)). "Thus, 'a showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest.'" Id. (quoting Steele, 36 F.3d at 70). This requirement can be satisfied by "allegations and proof of actual monetary loss, i.e., an out-of-pocket loss." Id.

Moreover, Plaintiffs cannot have standing when damages alleged are "speculative." Maio v. Aetna, Inc., 221 F.3d 472, 495 (3d Cir. 2000)). In Maio, the Third Circuit held that the appellant's "articulated theory of RICO injury [was] predicated exclusively on the possibility that future events might occur, rather than on the actual occurrence of those events and their present effect." Id. As a result, the

30

Court agreed "with appellees that appellants' theory of present economic loss require[d] a significant degree of factual speculation, and [was] in that sense insufficient to support a cause of action under RICO." Id.

In this case, Plaintiffs do not have standing to bring a civil RICO claim. Plaintiffs have not pled facts alleging they have suffered "a concrete financial loss," or a loss of any kind, as a result of Defendants' alleged racketeering activity. Instead, Plaintiffs allege that Mr. Linzey made threats to inflict financial harm to CELDF (not Plaintiffs) at some later date: (1) "Defendant Linzey threatened, if his demand for an $800,000 payment was not met, to 'take existing funders,' 'help [Defendant Belinsky] sue the board,' and 'burn all of CELDF's existing funders,'" (Ex. A ¶ 156); (2) "Defendant Linzey made a threat to inflict financial harm to CELDF if he did not receive his severance payment in the aforementioned referenced high six figure amount," (Ex. A ¶ 159.) The $800,000 payment was never paid to Mr. Linzey. In fact, no payment has been made to Mr. Linzey.

> **2.    Plaintiffs failed to plead facts showing that they suffered a "concrete financial loss" as a result of Mr. Linzey's alleged threats.**

Plaintiffs are unable to satisfy RICO's civil pleading requirement because the events pled do not allege a direct relationship between Defendants' conduct and Plaintiffs' alleged injuries. "Under 18 U.S.C. § 1962(c), a civil cause of action exists for persons injured 'by reason of' a defendant's RICO violation." St. Luke's Health

Network, Inc. v. Lancaster Gen. Hosp., No. 18-2157, 2019 U.S. Dist. LEXIS 156308, at *11 (E.D. Pa. Sep. 12, 2019) (quoting Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 456 (2006)). "An injury 'by reason of' a RICO violation requires the plaintiff show 'that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well.'" Id. (quoting Hemi Group, LLC v. City of New York, N.Y., 559 U.S. 1, 9 (2010)) (quotations omitted).

Plaintiffs fail to show that the RICO predicate offenses were the "proximate cause" of any claimed injury as the link between the injury asserted and injurious conduct alleged is too remote and indirect. First, Plaintiffs have suffered no injury and, as at-will employees, cannot allege indefinite employment.   Further, the Complaint is devoid of any allegation that contractors' agreements were in anyway terminated prematurely or improperly.

### 3.   Plaintiffs have not alleged a RICO claim for wire fraud.

As referenced above, "[t]he elements of a civil RICO claim under § 1962(c) are, "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity, (5) which results in injury to the plaintiffs' business or property." Sedima, S.P.R.I. v. Imrex Co., 473 U.S. 479, 496 (1985). "A pattern of racketeering activity is established by showing that the defendants engaged in at least two predicate acts within ten years of each other." Miller v. Burt, 765 F. App'x 834, 838 (3d Cir. 2019) (citing 18 U.S.C. § 1961(1) & (5)).  Here, Plaintiffs allege that

the racketeering activity engaged in by Mr. Linzey was wire fraud. (Ex. A ¶¶ 158-9.) To make out a claim for wire fraud, a plaintiff must prove: (1) that the defendant intentionally participated, (2) in a scheme to defraud, (3) the plaintiff of money or property, (4) by means of material misrepresentations, (5) using the mails or wires, (6) and that the plaintiff relied on a misrepresentation made in furtherance of the fraudulent scheme, (7) that such misrepresentation would have been relied upon by a reasonable person, (8) that the plaintiff suffered injury as a result of such reliance, and (9) that the plaintiff incurred a specifiable amount of damages. See Walter v. Palisades Collection, LLC, 480 F. Supp. 2d 797, 803 (E.D. Pa. 2007).

Plaintiffs in this case have failed to satisfy the following elements of this test: (4) Plaintiffs did not plead that any material misrepresentations were made by Mr. Linzey; (5) Plaintiffs do not plead facts alleging that Mr. Linzey used the mail or wires; (6) because Plaintiffs did not plead that Mr. Linzey made a misrepresentation – they were unable to plead that they relied on his misrepresentations; (7) Plaintiffs were also unable to plead that a reasonable person would have relied on Mr. Linzey's misrepresentations; (8) Plaintiffs have not pled any injuries as a result of Mr. Linzey's $800,000 demand; and (9) Plaintiffs failed to plead that they incurred a specifiable amount of damages as a result of Mr. Linzey's $800,000 demand.

For the foregoing reasons, Plaintiffs' civil RICO claim must be dismissed.

### H.     Plaintiffs' Demand for Monetary Damages Must be Dismissed.

Plaintiffs' request for a Preliminary Injunction contains a demand for compensatory and exemplary damages, implying a request for money damages. (Ex. A ¶ 180.) However, the averments contained in Plaintiffs' Complaint fail to support such a demand. Plaintiffs' demand for money damages must be dismissed.

#### 1.     Plaintiffs' demand for compensatory damages is not supported by the Complaint's factual averments and is also not ripe for adjudication.

Plaintiffs cannot support their demand for compensatory damages because they do not identify any pecuniary harm to them. Instead, their Complaint speaks in terms of resolutions by the Board to perform certain activity, which did not occur. (Ex. A ¶ 50.) For example, Plaintiffs contend that "the Board member defendants . . . used the May 14th resolution . . . to fire all of the full-time staff organizers, revoke their benefits, and outsource their financial arrangements to the CRNs by the end of 2019." (Ex. A ¶¶ 50-51.) However, there is no allegation that any staff member was actually fired. Plaintiffs also allege that the Board resolved to pay Mr. Linzey a cash severance. Again, this did not occur, as explicitly set forth in the Complaint. (See Section E.1., *supra*.) Finally, Plaintiffs contend that the Board voted to initiate dissolution proceedings dissolve CELDF, but this did not occur either. (Ex. A. ¶ 90.) In sum, nothing has happened that might have caused Plaintiffs to sustain monetary damages.

In addition to being factually unfounded, Plaintiffs' alleged money damages are contingent on the occurrence of events that have not happened. Consequently, any action seeking money damages on the part of Plaintiffs is not ripe for adjudication, and the Court does not have jurisdiction to pass judgment on such a dispute. (See Section E.2., *supra*.)

### 2. Plaintiffs' demand for exemplary or punitive damages is not supported by Plaintiffs' factual averments.

Plaintiffs also set forth a demand for exemplary or punitive damages. (Ex. A ¶ 180(h)). However, under Pennsylvania law, punitive damages are an "extreme remedy" and are available only when the plaintiff has established that the defendant has acted in "a particularly outrageous fashion." Phillips v. Cricket Lighters, 883 A.2d 439, 445-46 (Pa. 2005). To establish the facts necessary to make out a claim for punitive damages, "the state of mind of the actor is vital" and the defendant's act or failure to act "must be intentional, reckless or malicious." Hutchinson v. Luddy, 870 A.2d 766, 770-71 (Pa. 2005). "Punitive damages may be imposed for torts that are committed willfully, maliciously, or so carelessly as to indicate wanton disregard of the rights of the party injured." G.J.D. v. Johnson, 713 A.2d 1127, 1129 (Pa. 1998). Notably, "punitive damages are appropriate only where there has been conduct more egregious than that which merely establishes the underlying tort." Geyer v. Steinbronn, 506 A.2d 901, 915 (Pa. Super. Ct. 1986). "Conduct is outrageous when it is malicious, wanton, reckless, willful or oppressive." Trotman

v. Mecchella, 618 A.2d 982, 985 (Pa. Super. Ct. 1992).  Outrageous conduct is found

where the actor shows evil motive or reckless indifference to the rights of others.

See id. (citing Feld v. Merriam, 485 A.2d 742 (Pa. 1984)).  To support a claim for

punitive damages, there must be fact-specific allegations about "acts of malice,

vindictiveness and a wholly wanton disregard of the rights of others."  Pittsburgh

Live Inc. v. Servol, 615 A.2d 438, 442 (Pa. Super. Ct. 1992).  Boilerplate allegations

that all of the Defendants' conduct was "intentional," "willful," "wanton,"

"deliberate," "knowing," "purposeful" and "intentional" are insufficient to meet this

standard.  See Smith v. Brown, 423 A.2d 743, 745-46 (Pa. Super. Ct. 1980).

"Recklessness  is  distinguishable  from  negligence  on  the  basis  that

recklessness requires conscious action or inaction which creates a substantial risk of

harm to others, whereas negligence suggests unconscious inadvertence."  Feleccia

v. Lackawanna Coll., 156 A.3d 1200, 1210-11 (Pa. Super. Ct. 2017).

In this case, Plaintiffs allege, at best, prospective action by Defendants that

was directed toward furthering the mission of CELDF in the face of apparently

insurmountable differences about the future direction of the organization between

some of the staff and Mr. Linzey.  Even if the alleged actions occurred, they would

not rise to the level of outrageous conduct or recklessness, which is the prerequisite

for an award of punitive damage under Pennsylvania law.  Further, to the extent

Plaintiffs do not set forth tort theories against Defendants, punitive damages are not

available at all.  Accordingly, Defendants respectfully request the Court to strike Plaintiffs' request for an award of exemplary damages.

## VI.   CONCLUSION

For the reasons set forth herein, Defendants Thomas Alan Linzey, Tammy Belinsky, Fred Walls, and Edward Wells, Community Environmental Legal Defense Fund and the Center for Democratic and Environmental Rights respectfully request the Court to grant the Motion to Dismiss and dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted this 16th day of January 2020,

> **KAUFMAN DOLOWICH & VOLUCK, LLP**
> *Counsel for Defendants Tammy Belinsky, Fred Walls, Edward Wells and Community Environmental Legal Defense Fund*
>
> By: */s/Christopher J. Tellner*
>     Christopher J. Tellner Esquire
>     (*Pro hac vice pending*)
>
> By: */s/Gregory F. Brown*
>     Gregory F. Brown, Esquire
>
> **JACKSON LEWIS P.C.**
> *Counsel for Thomas A. Linzey, in his Official Capacity*
>
> By: */s/ Eileen K. Keefe*
>     Eileen K. Keefe, Esquire
>
> By: */s/ Kristin L. Witherell*
>     Kristin L. Witherell, Esquire
>     (*Pro hac vice to follow*)
>
> **WEINHEIMER HABER & COCO, P.C.**
> *Counsel for Defendants Thomas Alan Linzey, in his Individual Capacity, and Center for Democratic and Environmental Rights*
>
> By: */s/ Bethann R. Lloyd*
>     Bethann R. Lloyd, Esquire