**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Stacey L. Schmader, Leticia O'Dell, Chad Nicholson, Kai Huschke, Markie Miller, Michelle Sanborn, Malinda Clatterbuck, Crystal Jankowski, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:20-cv-00067-JPW |
| | ) | |
| v. | ) | |
| | ) | |
| Thomas Alan Linzey, in his Individual and Official Capacities; Tammy Belinsky, in her Individual and Official Capacities; Fred Walls, in his Individual and Official Capacities; Edward Wells, in his Individual and Official Capacities; Community Environmental Legal Defense Fund and the Center for Democratic and Environmental Rights; | ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | <u>Oral Arguments Requested</u> |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**INTRODUCTION** ……………………………………………………………………… **5**

**STATEMENT OF FACTS** ………………………………………………………….... **5**

**PROCEDURAL POSTURE** ………………………………………………………….... **5**

**STANDARD OF LAW** ……………………………………………………………… **6**

**ARGUMENT** ………………………………………………………………………….... **7**

*Plaintiffs satisfy the first element of injunctive relief because the clear, documented violations of state and federal law demonstrate a solid claim on the merits of Plaintiffs' case. …………………..* 8

*Plaintiffs would suffer immediate, irreparable harm without a court order barring Defendants from continuing to squander CELDF funds, steal CELDF donors, ruin CELDF's goodwill, and utterly destroy this unique nonprofit organization. ……………………………………………………….* 18

*The balance of harms tips sharply in favor of an injunction because compliance with its terms only requires Defendants to abide by pre-existing obligations, while averting unjust injury to Plaintiffs. ……* 19

*Injunctive relief would serve the public's interests in honest and good faith operation of charitable organizations, allocation of donated funds, and corporate leadership. ………………………………* 20

**CONCLUSION** ……………………………………………………………………….... **21**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Bailey v. Jacobs*,
        189 A. 320 (Pa. 1937) ……………………………………………………    17

*Bailey v. Jurnak*,
        No. 3:18-CV-1437 (M.D. Pa. July 19, 2019) …...…………………………....     7

*Burgettstown-Smith v. Langeloth*,
        588 A.2d 43 (Pa. Super. 1991) ………………………………………………    15

*Burnside v. Abbot Lab.*,
        351 Pa. Super 264 (1984) ………………………………….…………………..    11

*Chesney v. Stevens*,
        644 A.2d 1240 (Pa. Super. 1994) …………………………………………....    15

*GMH Associates Inc. v. Prudential Realty Group*,
        752 A.2d 889 (Pa. Super. 2000) ………………………………………...…….    11

*Hohe v. Casey*,
        868 F.2d 69 (3d Cir. 1989) ……………………………………..…………..…...    18-19

*Levy and Surrick v. Surrick*,
        524 A.2d 993 (Pa. 1987) …………………………………………………….    16-17

*Lutherland v. Dahlen*,
        53 A.2d 143 (Pa. 1947) …………………………………………………….…...    17

*Sedima v. S.P.R.L. v. Imrex Co.*,
        473 U.S. 479 (1985) ………………………………………………………….    13

*Thompson Coal Co. v. Pike Coal Co.*,
        412 A.2d 466 (Pa. 1979) …………………………………………………….    11

*U.S. v. Article of Drug Designated B-Complex Cholinos Capsules*
        362 F.2d 923 (3d Cir. 1996) …………………………………………...…….     7

*Van Buskirk v. Van Buskirk*,
        590 A.2d 4 (Pa. 1991) ……………………………………………...……….    15

*Winter v. Nat. Res. Def. Council, Inc.*,
        555 U.S. 7 (2008) …...……………………………………………………….. 7, 18

## TABLE OF AUTHORITIES (Continued)

Page(s)

*Wolf v. Wolf*,
     514 A.2d 901 (Pa. Super 1986) …………………...…………………..……..   15

**Statutes:**

15 PA. CONS. STAT. § 5712 …………………………………………….…...   8-9, 20

15 PA. CONS. STAT. § 5713 …………………………………………………….…   9

18 PA. CONS. STAT. ANN. § 3923 …………………………………………….…..   13

18 USC § 1961 ………………………………………………………….…   12-14

18 USC § 1343 ……………………………………………………………..…   13

26 CFR § 53.4958-4 …………………………………………………….…..   10

26 USC § 501 ……...……………………………………………………...…...   10

**Rules:**

Fed. R. Civ. P. 65 ………………………………………………………….   5-7, 21

**Other Authorities**

13 Summ. Pa. Jur. 2d  Business Relationships § 11:24 ……..…………………….…...…   17-18

## I.  INTRODUCTION

Stacey L. Schmader, Leticia O'Dell, Chad Nicholson, Kai Huschke, Markie Miller, Michelle Sanborn, Malinda Clatterbuck, and Crystal Jankowski ("Plaintiffs"), by and through their attorneys, submit this memorandum in support of their motion for a Temporary Restraining Order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and for a Preliminary Injunction pursuant to Rule 65(a). Plaintiffs seek injunctive relief from Defendants' continuing series of attempts to ruin Plaintiffs' careers and dissolve the Community Environmental Legal Defense Fund ("CELDF") before a trial can put a stop to the destruction.

Prior to the separation compensation "parachute" proposed for Defendant Linzey,  and attempts to divert CELDF funding to his directly competing organization, and the retaliatory firing of all CELDF staff, the *status quo* was that of a dedicated cadre of professionals working for a nonprofit that allowed them to pursue their shared commitment. Plaintiffs seek to restore this.

## II.  STATEMENT OF FACTS

The attached verified Amended Complaint contains relevant facts, which this motion now incorporates fully as if set forth herein.

## III.  PROCEDURAL POSTURE

Plaintiffs filed a Complaint and a Petition For *Ex Parte* Injunctive Relief in the Court of Common Pleas of Franklin County, Pennsylvania against Thomas Linzey, Tammy Belinsky, Fred Walls, Edward Wells, CELDF, and the Center for Democratic and Environmental Rights ("CDER"), (collectively, "Defendants").

The Complaint seeks equitable relief to enjoin Defendants from taking actions to dissolve the Community Environmental Legal Defense Fund, fire its staff without justification, and transfer substantially all of its assets to Defendant Linzey's new organization.

A true and correct copy of the verified original Complaint and the Petition for an *ex parte* Temporary Restraining Order and Preliminary Injunction are attached hereto and incorporated herein as if set forth fully.

Defendants removed the proceedings to this Court, where Plaintiffs now seek injunctive relief from the ongoing harms they suffer while pursuing a final verdict.

For months prior to and all throughout the pendency of this litigation, Plaintiffs have sought negotiations but Defendants have responded to these communications with nothing but bad-faith counter-offers and retaliatory acts.

Contemporaneously with the filing of this memorandum and the Motion for a Temporary Restraining Order and Preliminary Injunction, Plaintiffs are also filing a Motion to Amend Complaint and a proffered Amended Complaint, adding facts and allegations pertaining to events that either transpired or became known after the filing of the original State Court Action.

## IV.    STANDARD OF LAW

To preserve the *status quo*, a federal district court "may issue a temporary restraining order without written or oral notice" after the movant offers "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. Pro. 65(b)(1)(a).

An attorney requesting a temporary restraining order must also "certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. Pro 65(b)(1)(B).

With "notice to the adverse party," a court may issue a preliminary injunction. Fed. R. Civ. Pro. 65(a)(1). "The standards for a temporary restraining order are the same as those for a preliminary injunction." *Bailey v. Jurnak*, No. 3:18-CV-1437, 3 (M.D. Pa. July 19, 2019) (quoting *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994).

This standard requires a plaintiff to establish that the plaintiff is: (1) likely to succeed on the merits, (2) likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in the Plaintiff's favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

When evaluating whether to grant a motion for injunctive relief, District Courts in the Third Circuit are empowered with broad discretion because they are "best qualified to form a judgment as to the likelihood of a repetition of the offense." *U.S. v. Article of Drug Designated B-Complex Cholinos Capsules*, 362 F.2d 923, 928 (3d Cir. 1996). In the face of such repeating offenses, injunctive relief is the only recourse left against Defendants, who will not stop until nothing is left of CELDF to sabotage.

## V.    ARGUMENT

A preliminary injunction is an appropriate and, indeed, essential remedy that will properly restore the *status quo* as it existed prior to Defendants' dissolution of the Community Environmental Legal Defense Fund. The Plaintiffs' verified amended complaint shows a likelihood of success on the merits of both state and federal claims; Plaintiffs suffer ongoing,

irreparable harm as evidenced by Defendants' continued escalation of their disruptive behavior; and whereas the Plaintiffs are suffering harms, without the requested relief the Defendants would not be harmed by an injunction prohibiting them from acting according to pre-existing fiduciary obligations; and an injunction to stymie unconscionable acts of self-dealing using money otherwise earmarked for a charitable purpose and to preserve the functioning of an accomplished non-profit clearly furthers the public interest.

**A. Plaintiffs satisfy the first element of injunctive relief because the clear, documented violations of state and federal law demonstrate a solid claim on the merits of Plaintiffs' case.**

As the first factor requires, the Plaintiffs through their verified amended complaint alleges facts to show a strong case on the merits of all counts.

*First*, the Defendants violated Pennsylvania law, 15 PA. CONS. STAT. § 5712 *et seq,* which sets forth the fiduciary duties for officers and directors of Pennsylvania nonprofit corporations.

> A director of a nonprofit corporation shall stand in a fiduciary relation to the corporation and shall perform his duties as a director, including his duties as a member of any committee of the board which he may serve, in good faith, *in a manner he reasonably believes to be in the best interests of the corporation* and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances.

15 PA. CONS. STAT. § 5712(a) (emphasis added).

> An officer *shall perform his duties as an officer in good faith, in a manner he reasonably believes to be in the best interests of the corporation* and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances.

15 PA. CONS. STAT. § 5712(c) (emphasis added).

Pennsylvania law also opens directors and officers up to personal liability for breaching this standard through "self-dealing, willful misconduct, or recklessness." *Id*. at § 5713(a).

Each Defendant is an officer or director of CELDF and therefore violates 15 PA. CONS. STAT. § 5712(a) and/or § 5712(c) by acting in ways that the defendant could not reasonably believe to be in the best interests of CELDF.

Tammy Belinsky, Edward Walls, and Fred Wells ("Defendant Board members") are Directors of CELDF and violated 15 PA. CONS. STAT. § 5712(a) by participating in and approving acts that any reasonable person would understand to contradict the interests of CELDF as a going concern. These acts include but are not limited to the approval of multiple bylaw amendments, drafted by and discussed extensively with Defendant Linzey, who stands in a clear conflict of interest surrounding conditions of his departure and of CELDF's dissolution given his leadership role in CELDF and over the CELDF Board. Linzey has a personal interest in receiving a departure parachute and in diverting CELDF assets and goodwill towards his new pet project, the Center for Democratic and Environmental Rights ("CDER") a nonprofit corporation and Defendant herein. .

The duty of good faith and fair dealing compelled by § 5712(a) and § 5712(c) would require Defendant Board members and Defendant Linzey to negotiate the terms of Defendant Linzey's departure from CELDF at arms-length, such as by involving legal counsel in the negotiations. These parties instead held these negotiations behind closed doors, despite Plaintiffs' repeated requests for transparency and involvement. The Board further appears to have affirmatively decided to ignore the advice their retained counsel concerning the propriety of making a severance deal with Defendant Linzey.

A reasonable person owing a duty of care to an organization would not knowingly subject that organization to monetary liability or public embarrassment, which Defendant Board members have done through entertaining an $800,000 disbursement to Defendant Linzey in violation of the Internal Revenue Code's prohibitions on excess benefit transactions and on private inurement.

An excess benefit transaction is one in which an economic benefit is provided by the organization to or for the use of a "disqualified person" and the value of the economic benefit provided exceeds the value of consideration for the benefit. 26 CFR § 53.4958-4(a)(1).

Defendants Board members and Defendant Linzey knew or should have known that as a co-founder and officer of CELDF, Defendant Linzey exercised substantial influence in the financial affairs of CELDF, and as such would be a "disqualified person" according to U.S. Treasury Department regulations and be barred from receiving all or part of the $800,000 benefit upon departing CELDF.

The private inurement doctrine renders § 501(c)(3) status available only to organizations wherein "no part of the net earnings of which inures to the benefit of any private shareholder or individual." A § 501(c)(3) organization that violates the private inurement doctrine fails to be operated exclusively for one or more exempt purposes and may be subjected to revocation of its exempt status. See Treas. Reg. § 1.501(c)(3)-1(c)(2).

Defendants Board members violated their fiduciary duties by aiding and abetting the planned private inurement of $800,000 to Defendant Linzey from the general cash reserves of CELDF and by so doing, failing to investigate and protect CELDF from potential forfeiture if its tax-exempt status.

Defendant Linzey has also violated his duties as an officer of CELDF, Executive Director at times and President throughout, by soliciting donations from CELDF donors for CDER by way of meetings he set up and attended in his capacity as an officer of CELDF.

Defendants have been diverting funding and spoiling the goodwill of CELDF and continue to do so. Attempts to dissolve CELDF despite its vitality, achievements, committed staff, and widespread commitments to client communities now threaten to leave clients and staff in limbo. A reasonable, informed person would not act to destroy the organization to which they owe care and loyalty in order to fund another organization to which they owe no duties.

*Second*, Defendants engaged in a civil conspiracy to violate Pennsylvania's Nonprofit Corporation law, the Internal Revenue Code, and other legal provisions set forth below.

Establishing a civil conspiracy requires a plaintiff to show that: "two or more persons combine or enter an agreement to commit an unlawful act or to do an otherwise lawful act by unlawful means." *Burnside v. Abbot Lab.*, 351 Pa. Super 264, 277-78 (1984).

Pennsylvania requires civil conspiracy allegations to include proof that the defendants acted with malice. *Id*. at 278. Further, the unlawful intent must be without justification. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979). Lastly, an overt act is required in a claim for conspiracy. *GMH Associates Inc. v. Prudential Realty Group*, 752 A.2d 889, 905 (Pa. Super. 2000).

A conspiratorial scheme occurs when defendants hold meetings, conferences, telephone calls, and otherwise cooperate with each other beyond just happening to act negligently, contemporaneously. *Burnside*, 351 Pa. Super at 280. All Defendants in this case acted

deliberately, using meetings, conferences, and email communication to coordinate the unlawful acts encapsulated in the Amended Complaint.

Defendants had no justification other than their own malicious intent to terminate the existence of CELDF for false and improper reasons in order to turn substantially all of CELDF's assets over to a nonprofit organization founded and controlled by Defendant Linzey.

The acts of the Defendants Board members in concert with Defendant Thomas Linzey, as founder and corporate officer of CDER, constitute the conspiracy. Therefore, the requirement of two or more people is met. The meetings of the CELDF Board and dual participation of Defendant Linzey as a CELDF corporate officer and CDER corporate representative are the basis of the conspiracy; therefore, the requirements of an agreement and unlawful act are met.[1] The requirement of the overt act is met in that the CELDF Board knowingly implemented proposals made by Defendant Linzey as CELDF officer to debilitate CELDF's continued functioning and ultimately to terminate its existence, based on motives of self-dealing, deliberate misconduct and/or recklessness. From these actions, malicious intent may be inferred.

*Third*, Defendants violated the Racketeer Influenced & Corrupt Organizations Act, 18 USC § 1961 *et seq*., by engaging in a pattern of racketeering activity such as coercion and wire fraud.

The citizen enforcement provision of the Racketeer Influenced & Corrupt Organizations (RICO) Act requires a "pattern of racketeering activity," which is defined as being at least two instances where defendant(s) have engaged in, *inter alia*, any act or threat involving extortion as

---

[1] Additionally, since at least November 12, 2019, the Board members have held meetings without notifying Plaintiff. Schmader, who is Secretary of CELDF.

well as any act which is indictable under 18 USC § 1343 (relating to wire fraud). 18 USC § 1961(1).

Standing to bring a civil RICO suit requires only that the Plaintiffs have suffered an injury as a result of the predicate or underlying acts, or from the racketeering itself. *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498-500 (1985). The defendant(s) do not have to have been charged with the underlying offenses, so long as facts show that they *could* be. *Id*. at. 488

Wire fraud requires that a person devise or intend to devise any scheme or artifice for obtaining money or property, using the internet. 18 USC § 1343. Obtaining money or property under false pretenses is enough to show a scheme or artifice.

Defendant Board members used false pretenses to vote to dissolve CELDF and did so through electronic communications. The internal disagreements and the alleged difficulty of continued organizational functioning was a falsely pretextual reason to end CELDF's existence and an attempt to obscure the real motive: siphoning CELDF assets to Defendant Linzey and CDER. Defendant Linzey also obtained money under false pretenses, by misrepresenting the relationship between CDER and CELDF and obscuring his own conflicts of interest as a Director of both organizations.

Pennsylvania's Crimes Code defines extortion as, *inter alia*, obtaining or withholding property of another by threatening to inflict harm which would not benefit the actor. 18 Pa.C.S.A. § 3923(a)(7). Defendant Linzey threatened, if his demand for an $800,000 payment were not met, to "take the existing funders," "help [Defendant Belinsky] sue the board," and "burn all of CELDF's existing funders." *See* Ex. R.

Defendant Linzey plainly threatened to inflict harm upon CELDF by taking CELDF's funding and suing the organization if his demand to obtain financial gain was not met.

In an October 24, 2019 email, Linzey stated:

[I]t is in the best interests of the organization to **arrive at a settlement with the organization concerning my potential departure.** As long as I remain with the organization, I have a fiduciary, officer, and legal counsel duty to ensure that the organization is acting pursuant to Pennsylvania law. **While I hope it does not come down to filing the lawsuit, it is the only option that Fred and Stacey have produced** ... . They have thus put the organization in peril; because **once a lawsuit is filed, word will circulate to donors and other supporters of the unstableness [sic] of the Legal Defense Fund.**

Ex. J at 2 (emphasis added).

Here, again, Defendant Linzey made a threat to inflict financial harm to CELDF if he did not receive his severance payment of $800,000. This constitutes a separate instance of an extortion threat, adding to the "pattern of activity" required to be shown under the RICO statute.

As noted in Count One, *supra*, after the October 21 threat, CELDF contract attorneys called Defendant Linzey out directly for "threatening to take CELDF's funders in his departure from this organization." Ex. X, CELDF Attorneys' Letter, Oct. 25, 2019. Defendant Linzey's response did not refute the allegations against him, but did acknowledge that recent events surrounding his departure negotiations have "been kept secret from both the lawyers and the organizers for the Legal Defense Fund." *Id*.

These multiple acts of wire fraud and multiple acts of coercion constitute a pattern of racketeering activity with no end in sight and which directly harm Plaintiffs' job security and ability to use CELDF as a stable hub for their work.

*Fourth*, Defendant Linzey sought unjust enrichment in order to benefit himself, with the assistance of Defendant Board members and at the expense of Plaintiffs and Defendants' own organization.

In Pennsylvania, the equitable doctrine of unjust enrichment requires a showing of "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Wolf v. Wolf*, 514 A.2d 901 (Pa. Super. 1986), overruled on other grounds, *Van Buskirk v. Van Buskirk*, 590 A.2d 4 (Pa. 1991); see also *Burgettstown-Smith v. Langeloth*, 588 A.2d 43 (Pa. Super. 1991).

Where unjust enrichment is found, the law implies a contract, referred to as either a quasi contract or a contract implied in law, which requires that the defendant pay to plaintiff the value of the benefit conferred. *Chesney v. Stevens*, 644 A.2d 1240 (Pa.Super. 1994).

Upon information and belief, Defendant Linzey has acquired or prospectively will acquire benefits in the form of cash and economic assets of CELDF for the personal benefit of himself and his estate, conferred by Defendants Board members. If Defendant Linzey accepts and retains such benefits under the circumstances alleged hereinabove, it would be inequitable for him to do so without payment of value to CELDF.

Upon information and belief, Defendant Linzey has acquired or prospectively will acquire benefits in the form of cash and economic assets of CELDF for the benefit of himself as an officer of the Center for Democratic and Environmental Rights. If Defendant Linzey in his capacity as an officer of the Center for Democratic and Environmental rights accepts and retains

such benefits under the circumstances alleged hereinabove, it would be inequitable for him to do so without payment of value to CELDF.

After the filing of the original complaint, in December of 2019, a foundation with a lengthy history of support of CELDF sent a donation of $200,000 to the CELDF office address intended for Defendant CDER, and the accompanying cover letter suggested that the donor thought CDER was a corporate affiliate of CELDF.

Also in December of 2019, another longtime CELDF donor contacted Plaintiff Michelle Sanborn and pressured her to withdraw as a Plaintiff to this lawsuit, stating that "it will not go well" for Sanborn to continue her opposition to Defendant Linzey, and would be "bad for the work in New Hampshire and bad for CELDF." This donor sent Sanborn a proposed settlement agreement that Defendant Linzey had authored and shared with this donor. Ex. Y, *supra.* The agreement requires an $800,000 payment to Defendant CDER, and a change of the business identity of CELDF to destroy its visibility to donors as an alternative to CDER. The agreement is written so that Defendant Linzey would sign off on the agreement as Executive Director of CELDF -- an inherent conflict of interest causing any resulting transfer of funds to be by definition unjust.

*Fifth*, that Defendant Linzey has usurped corporate opportunities in violation of the common law doctrine prohibiting officers or directors from competing with their organization and which Defendants have done here by diverting donations and thwarting organizing opportunities.

The doctrine of corporate opportunity imposes liability on officers or directors "who take personal advantage of business opportunities when these opportunities fall within the 'scope of

activities' of, and constitute a 'present or potential advantage' to, the corporation." *Levy and Surrick v. Surrick*, 524 A.2d 993, 995 (Pa. 1987). The doctrine prohibits an officer or director from competing with the corporation in any fashion. *Id.*

The principle against usurpation of corporate opportunities stems from the fiduciary duty owed to the corporation by officers and directors. *Lutherland v. Dahlen*, 53 A.2d 143, 147 (Pa. 1947). The test of liability is whether or not they have unjustly gained enrichment. *Bailey v. Jacobs*, 189 A. 320, 324 (Pa. 1937). In this test, it is irrelevant whether their actions have caused a loss or any type of harm to the corporation. *Id.* A fiduciary may not place himself in a position that "invites conflict between self-interest and integrity." *Id.* at 324-25.

The allegations of unjust enrichment give rise to similar claims for corporate usurpation, because Defendant Linzey took donations for himself and his pet project using connections and authority that he established in his roles of President and Executive Director of CELDF.

*Sixth*, that Defendants have wasted corporate assets by squandering funding earmarked for CELDF's ongoing charitable work into CDER.

Pennsylvania jurisprudence states that in order to find that a waste of corporate assets has occurred, "there must be a blatant squandering of assets to the detriment of the business entity, as if the sole purpose were to harm the entity." 13 Summ. Pa. Jur. 2d  Business Relationships § 11:24. American Law Institute, Principles of Corporate Governance, section 1.42, Waste of Corporate Assets: "A transaction constitutes a 'waste of corporate assets' if it involves an expenditure of corporate funds or a disposition of corporate assets for which no consideration is received in exchange and for which there is no rational business purpose." Section 1.42.[2]

---

[2] The Supreme Court of Pennsylvania adopted certain sections of the Principles, and noted that the adoption of those sections was not a rejection of other sections. *Cuker v. Mikalauskas,* 692 A.2d 1042, 1049 n.5 (Pa. 1997). Section 1.42 was not one of the specifically adopted sections. The definition of waste provided in Pennsylvania

Here, Defendant Board Members conspired with Defendant Linzey to squander, at first, $800,000 belonging to CELDF for his extortionate demand in exchange for his not taking some of CELDF's donors with him to his new organization, CDER. Then, Defendant Board Members went even further, voting at Defendant Linzey's behest to dissolve the entire organization and transfer assets to CDER. This dissolution also necessarily involves terminating the employment of Plaintiffs and other CELDF staff and contractors, ending the work of the organization.

Finances squandered include not only the entirety of CELDF's assets that might remain after the existing obligations have been covered, but also the debts incurred in this dissolution process. Paying for attorneys to dissolve the organization is literally spending assets to the detriment of the entity, for the sole purpose of harming that entity, as 13 Summ. Pa. Jur. 2d Business Relationships § 11:24 explicitly explains.

The facts support a high likelihood that Plaintiffs will succeed on the merits: Defendants breached several state and federal laws by taking actions to benefit Defendant Linzey while purporting to act on behalf of the very organization whose demise they seek.

**B. Plaintiffs would suffer immediate, irreparable harm without a court order barring Defendants from continuing to squander CELDF funds, steal CELDF donors, ruin CELDF's goodwill, and utterly destroy this unique nonprofit organization.**

To satisfy the second criteria of a plea for injunctive relief, a Plaintiff must show that immediate, irreparable harm will likely befall the Plaintiff without the requested relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). Harm is "irreparable" when monetary damages are insufficient. *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989). The "risk" of

---

Jurisprudence is not contradicted by the definition stated in the ALI Principles and has been relied on by PA courts. *See White v. George*, 66 Pa. D. & C.4th 129, 149 (2004).

irreparable harm is inadequate, Plaintiffs must make a "clear showing" of the immediate, irreparable injury. *Id*.

The ongoing and worsening injury Plaintiffs suffer cannot be undone retroactively, through monetary damages, and the continued escalation of Defendants' bad acts even after Plaintiffs filed the original complaint proves the likelihood that more such instances will occur.

The challenged conduct threatens the very existence of CELDF and, as a one-of-a-kind charitable organization, no monetary damage could completely compensate for the harms to Plaintiffs of trying to replace the irreplaceable.

Should Defendant Linzey continue disparaging CELDF to other donors, this would imperil the goodwill of the organization and threaten its vitality; should Defendants Board Members continue with their proposed dissolution, CELDF would no longer exist.

Monetary damages are a woefully inadequate replacement for an organization that took 25 years to build.

> ### C. The balance of harms tips sharply in favor of an injunction because compliance with its terms only requires Defendants to abide by pre-existing obligations, while averting unjust injury to Plaintiffs.

Defendants have no legal right to strip assets from a nonprofit organization that no reasonable person would dissolve. Plaintiffs' harms are great, consisting of losing their jobs and their ability to support themselves and their families while doing unique, meaningful work.

The third element of a preliminary injunction here is self-evident: Defendants already have duties to care for and protect CELDF's reputation and success; an injunction asking Defendants to refrain from violating their existing obligations adds no additional hardship and only serves to stymie their efforts to disrupt Plaintiffs' lives and work.

The balance of equities clearly favors Plaintiffs: the injunction would preserve the structure and branding of CELDF and allow continued progress in the form of backstopping grassroots groups to achieve greater local participation in community affairs and decision-making.

Dissolution and termination of CELDF would cause termination of Plaintiffs' employment, cause them financial difficulties, strip them of health insurance and other benefits, and terminate their relationships with grassroots activists.

Defendants will suffer no harm from a court order precluding Defendants from dissolving a fully functional and highly successful charitable organization in which Defendants have no property interest, when its dissolution would fundamentally destroy hard-earned achievements, working relationships and good will that experienced staff have spent years building in dozens of communities across the country.

The requested injunction balances equities by pausing CELDF's unjust dissolution and halting threatened expenditures of corporate resources and would cause no legally cognizable harm to the Defendants even as it would avert ongoing catastrophic harm to the Plaintiffs.

**D. Injunctive relief would serve the public's interests in honest and good faith operation of charitable organizations, allocation of donated funds, and corporate leadership.**

Finally, the fourth factor, that the injunction is in the public interest, is also satisfied because the Plaintiffs seek an injunction in order to continue serving the public through their charitable organization, and also because the challenged underlying acts undermine the standards of integrity and fiduciary responsibility to which decision-makers of nonprofit organizations must adhere.

Injunctive relief would be in the public interest because the assets that Defendants continue to waste would be preserved for their charitable purpose. Defendants would not be able to misinform the public and current or potential donors about the true state of affairs in CELDF's governing body, the staff and client communities. The public interest is served by having corporate officers and directors worthy of the trust and responsibility that the state legislature requires in statutes empowering nonprofit corporations to operate in their state.

The Pennsylvania Legislature, in enacting Pennsylvania's Nonprofit Law (15 Pa. Code § 5301), specified the duties of fiduciary responsibility and loyalty owed by directors and officers to the organization they represent. 15 PA. CONS. STAT. § 5712. Holding officers and directors accountable to these standards bolsters public trust among corporate leadership.

Here, enjoining Defendants from continuing to breach those same fiduciary duties would uphold the public interest in good nonprofit governance.

## VI.    CONCLUSION

Federal Rule 65(b) thus authorizes this Honorable Court to issue a temporary restraining order to preserve the *status quo* because Plaintiffs would suffer immediate and irreparable injury should Defendants' unlawful acts continue before a hearing may be held, Defendants suffer no cognizable injury under these terms, and while Plaintiffs no doubt can prevail on their claims to save their jobs and their organization, without the requested relief during the pendency of this action, Plaintiffs may be left with only a plundered nonprofit enterprise.

Date: January 21, 2020                           Respectfully submitted,

/s/   David M. Koller
David M. Koller, Esq.
Koller Law
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
Phone 215-545-8917

Fax 215-575-0826
davidk@phillyhometownlawyer.com
Counsel for Plaintiffs

**CERTIFICATION OF CONSULTATION WITH OPPOSING COUNSEL**

I hereby certify that during the week preceding December 23, 2019 while this matter was pending in Pennsylvania state court, I informed Defendants' counsel of Plaintiffs' intentions of filing a Motion for Temporary Restraining Order, which resulted in formal notice by the Court to all parties. That hearing was canceled in favor of negotiation to avoid a hearing, which took place during the last week of 2019 and the first week of 2020. On or about January 12, 2020, negotiations reached an impasse, I notified opposing counsel that Plaintiffs would file a motion in federal court and Defendants' counsel indicated they would oppose it..

/s/   David M. Koller
David M. Koller, Esq.
Counsel for Plaintiffs

**CERTIFICATION OF WORD COUNT**

I hereby certify that the word count for the foregoing Brief is 4,647, exclusive of the Table of Contents, Table of Authorities, Certification of Consultation with Opposing Counsel, Certification of Word Count and Certification of Service, as computed by the word-count software contained in Google Docs.

/s/   David M. Koller
David M. Koller, Esq.
Counsel for Plaintiffs