███████████████████████████████████████████

12/10/19

Attn:  Thomas Linzey
Center for Democratic and Environmental Rights
1320 N. Hollis St.
Spokane, WA 99201

Dear Thomas and Mari,

On behalf of the ████████████████, I am pleased to include a check for $200,000.00 for Center for Democratic and Environmental Rights, for general support.

In addition, we will consider renewing the $15,000.00 to be distributed by you as mini-grants to grassroots groups in your orbit. Let's discuss the mini-grant program – how it went last year and whether you wish to continue - at your earliest convenience.

In friendship,  ████████████

**Note: As in the past and for my records, please acknowledge receipt of the check and as appropriate during the course of the year, if there are noteworthy events or milestones, I would appreciate being appraised of them. As well, please mail me your most recent budget including the specific salaries of the top officers and list of foundation contributors. All correspondence can either be e-mailed or snail mailed, whichever is more convenient.**

19 DEC 2019 AM 10 L

Thomas Linzey
CELDF
P. O. Box 360
Mercersburg, PA 17236-0360

17236-036060



867

50-361/213

DATE 12/11/19

PAY TO THE
ORDER OF _Center for Democratic and Environmental Rights_ $ 200,000.00

_Two hundred thousand_ ———————————————— DOLLARS

MEMO



Stacey Schmader <stacey@celdf.org>

## Stuff

2 messages

---

**Thomas Alan Linzey, Esq.** <tal@pa.net>                                      Tue, Jun 18, 2019 at 7:03 PM
To: Stacey Schmader <stacey@celdf.org>, Mari Margil <mmargil@celdf.org>

Stacey and Mari,

Just to reiterate what was in the memorandum on the board resolution (which I'm assuming never got circulated), regardless of what happens at the gathering next week, I am not willing to continue to raise money for CELDF if the organization comes out of the gathering as dysfunctional as it was when it went in. Currently, I personally raise about half of the total budget for the organization.

Dysfunctional to me, at a minimum, means self-managing organizers, who are therefore unwilling or unable to make necessary strategic shifts that keep us from becoming Sears. It is my opinion that the reorganization plan, which the board passed, is one of the only alternatives at this point to correct the dysfunctionality of the organization.

I just want to be crystal clear about what I'm willing, and not willing, to do; prior to the gathering next week.

-Thomas

**Thomas Alan Linzey, Esq., Counsel**

**Community Environmental Legal Defense Fund**

**P.O. Box 360**

**Mercersburg, Pennsylvania 17236**

**(717) 498-0054**

**www.celdf.org**

**info@celdf.org**

**NOTICE: This communication is confidential, and exempt from disclosure, under the attorney-client privilege, the rules of professional responsibility, and the workproduct doctrine, by virtue of this client's engagement of the Community Environmental Legal Defense Fund for legal services and other related services, and the Community Environmental Legal Defense Fund's use of this communication to render those services to the client pursuant to that engagement.**

---

**Stacey Schmader** <stacey@celdf.org>                                      Tue, Dec 10, 2019 at 12:23 PM
To: Stacey Schmader <staceysch@gmail.com>

Stacey Schmader
Financial Officer
CELDF
PO Box 360
Mercersburg, PA 17236
717-498-0054
www.celdf.org



This communication is confidential, and exempt from disclosure, under the attorney-client privilege, the rules of professional responsibility, and the work product doctrine, by virtue of this client's engagement of the Community Environmental Legal Defense Fund for legal services and other related services, and the Community Environmental Legal Defense Fund's use of this communication to render those services to the client pursuant to that engagement.

[Quoted text hidden]

# EXHIBIT CC

## MINUTES
### Board of Directors
### Community Environmental Legal Defense Fund, Inc.
### *Sunday, December 1st , 2019 at 4:00 p.m. EST (By Teleconference Call)*

**Present:**

Tammy Belinsky, Board Member
Fred Walls, Board Member
Ed Wells, Board Member
Dan Brannen, Executive Director/Managing Attorney
Thomas Linzey, Senior Counsel

Board Member Belinsky opened the meeting at 4:05 p.m. EST.

**Business:**

Discussion about Dissolution vs. Continuing to Try to Reach a Settlement

Brannen opened the conversation by surveying the activity of the last two weeks, summarized how the decision to ask Thomas Linzey and Mari Margil to resign was arrived at, and how Dan believed that a settlement agreement by the Board was still the best path, rather than dissolution. Linzey further explained how that process had unfolded, and Brannen and Linzey offered their general thoughts on the process of dissolution, how to terminate ongoing cases, and how the Attorney General might or might not have a role in dissolution.

Board Member Belinsky spoke about how we should be exploring all options, and that we should be talking to the Community Rights Networks (CRN's), getting them ready for some kind of transition. Belinsky spoke about how CELDF simply is not sustainable, and that the CRN's may not be sustainable either.

Board Member Walls explained that he was uneasy about the resignations from Linzey and Margil, because of the new organization being created and their role in it. He asked whether the Board could just do a settlement with Linzey instead of doing the dissolution process.

Board Member Belinsky reiterated her support for the dissolution process and moving forward to dissolve the corporation. Board Member Wells also announced his support for the dissolution process, stating that he was in favor of either the CRN's or a new organization continuing the work.

Board Member Belinsky spoke about how this could be a "new start" for the organization, spinning off several other groups, to carry out the work.

Linzey raised the issue of why Brannen was so opposed to the dissolution process, to the point of reversing his decision to resign a week ago.

Brannen announced that he was committed to resigning as Executive Director, and left the call.

Board Members Walls addressed Linzey's comments about CELDF needing to move on, as it was, in Linzey's opinion, incapable of changing to fill the needs that are emerging in this area. He asked whether the whole situation was toxic, and how the Board ever fixes that.

<u>Selection of Executive Director</u>

Board Member Belinsky explained that with Brannen's resignation as Executive Director, that the Board needed to appoint a new Executive Director. She stated that she and Thomas had spoken to Karen Breslin. Linzey stated that he didn't think that she would be a good choice, as she expressed reservations about dissolving the organization.

Linzey reaffirmed that he was willing to serve as Executive Director to assist with the dissolution process. Board Member Belinsky stated that she didn't have the time to serve in that role.

Board Member Belinsky made a motion that the Board appoint Thomas Linzey as the new Executive Director for the organization. Board Member Wells seconded the motion and called for a vote.

VOTE

Belinsky – Yes
Wells – Yes
Walls – Yes

Motion to appoint Thomas Linzey as the new Executive Director was adopted 3-0 by a unanimous vote.

<u>Mari Margil's Severance Agreement</u>

Board Member Belinsky explained the need for the Board to approve Mari Margil's severance agreement.

Margil was brought onto the call to talk to the Board about some specific changes to her severance agreement. The Board asked Margil to make those changes. Board Member Belinsky then made a motion to approve the agreement, with those changes. Board Member Wells seconded the motion and asked for a vote.

VOTE

Belinsky: Yes
Wells: Yes
Walls: Yes

Motion to approve Margil's severance agreement with the small changes discussed on the call was approved by a unanimous, 3-0 vote.

Margil was to make those changes to the severance agreement and circulate to Walls and Wells, for signature, and then send that severance agreement back to Belinsky.

<u>Appointing a President</u>

Board Member Belinsky explained the need for the Board to have a President. Linzey explained that if Wells resigns, the Board must be able to appoint a new board member to fill his

seat. Linzey also explained that a five member operating board would be preferable, which would mean finding three new board members. To do that, pursuant to the Bylaws, means that the President must maintain a list from which the Executive Director appoints.

Board Member Wells made a motion to appoint Board Member Belinsky as President. Board Member Walls seconded the motion and asked for a vote.

VOTE

Belinsky: Yes
Wells: Yes
Walls: Yes

The motion to appoint Belinsky as President of the organization was adopted unanimously by a 3-0 vote.

Dissolution Steps

Linzey raised the issue of several dissolution-related activities that must be taken. Those include the running of two advertisements in Franklin County, Pennsylvania newspapers; and working with Emelyn to prepare the public statement on dissolution.

Board Member Walls asked about Board review of both. Linzey stated that he would circulate the language for the advertisements right after the call, and that once Emelyn was done with the public statement, that the statement would be circulated back to the Board for approval.

The Board generally approved the taking of these steps.

Board Member Belinsky volunteered to be the go-between between Linzey and Stacey Schmader, for documents and other materials necessary for the dissolution process to move forward. Linzey promised to prepare a dissolution plan and circulate to the Board. Belinsky agreed to get the Directors and Officers' insurance information from Schmader.

Next Meeting

The Board agreed to set a next meeting for the following Sunday, **December 8th, at 4:00 p.m. Eastern**, using the same call-in number and passcode.

Board Member Belinsky adjourned the meeting at 4:49 p.m. EST.

# EXHIBIT DD

---------- Forwarded message ---------
From: [redacted]
Date: Mon, Dec 23, 2019 at 4:47 PM
Subject: Re: Question!
To: Emelyn Lybarger <emelyn@celdf.org>
Cc: Stacey Schmader <stacey@celdf.org>

Hi Emelyn,
Sorry not to have been in touch sooner. I had an email exchange with your Board Chair who let me know that the organization was transitioning. We put a hold on our renewal process given that new information. Our office is closed for the holidays and I'll be back in January 6th. We can connect thereafter so I can learn more about your plans.
Hope you have a good holiday.

Cheers,

█████

On Dec 23, 2019, at 2:22 PM, Emelyn Lybarger <emelyn@celdf.org> wrote:

Hello █████,

I just wanted to check in on this, as we haven't heard anything. We are very grateful for the foundation's past support and appreciate the trustees considering supporting our work in the year ahead.

Our best wishes for the holidays, and a happy New Year!

Emelyn

--
Emelyn Lybarger
Communications and Outreach Director
717-498-0054
www.celdf.org



This communication is confidential, and exempt from disclosure, under the attorney-client privilege, the rules of professional responsibility, and the workproduct doctrine, by virtue of this client's engagement of the Community Environmental Legal Defense Fund for legal services and other related services, and the Community Environmental Legal Defense Fund's use of this communication to render those services to the client pursuant to that engagement.

--

**EXHIBIT EE**

# MINUTES
### Board of Directors
### Community Environmental Legal Defense Fund, Inc.
*Wednesday, November 20, 2019 at 6:00 p.m. EST (By Teleconference Call)*

**Present:**

Tammy Belinsky, Board Member
Fred Walls, Board Member
Ed Wells, Board Member
Dan Brannen, Esq., Executive Director/Managing Attorney
Thomas Linzey, Esq., Senior Counsel

**Business:**

Brannen Resolution: Resignation/Indemnification/Release

Board Member Belinsky called the Board Meeting to Order at 6:04 p.m. EST.
Belinsky introduced the proposed Board Resolution that had been prepared by Dan Brannen for Board review. The Resolution indemnifies Brannen for any actions that may be brought against him as a result of his recent tenure as Executive Director, and contained his resignation from the position.
Brannen spoke to the Resolution, explaining the provisions, which included the release and indemnification language. The Resolution also contains his formal resignation as Executive Director, notice of which was given on Monday, November 18th with an effective date of the Board Meeting held on November 20th.
Discussion by Board about the Resolution. Board Member Belinsky made a motion to approve Brannen's Resolution. Board Member Wells seconded the motion and called for a vote.

VOTE:
Belinsky: Yes
Wells: Yes
Walls: Yes

Resolution was adopted unanimously, by a 3-0 vote.

Discussion followed about circulating Brannen's Board Resolution for a signature by all of the Board Members, and getting the Resolution back to Belinsky for keeping as a Board record. (Adopted Resolution is Attachment #1 to these Board Minutes).

Belinsky Resolution: Initiating Dissolution of the Legal Defense Fund

Board Member Belinsky introduced the Board Resolution which would initiate dissolution of the Legal Defense Fund under Pennsylvania law.
Counsel Linzey noted that a prior version of the Resolution, without two "whereas" clauses added by Belinsky to further explain the Resolution, had circulated on Tuesday, November 19th via electronic mail to the Board Members, and received two votes of the Board,

thus adopting the Resolution contingent upon ratification at the next, subsequent Board meeting. Because of the additions to the Resolution, the current Resolution can be treated as a new Resolution, which must be voted on at the meeting by the Board.

A discussion about the current state of the Legal Defense Fund followed, and about the steps necessary to "wind up" the Legal Defense Fund in the event of dissolution. Board members noted that dissolution was a very serious option that had been explored, and they discussed the multiple ways in which they had worked to resolve organizational and management issues since May of 2019, and how those attempts at resolution had failed.

Belinsky and Brannen raised the issue (previously raised by the staff), of Linzey's work with the new organization and whether Linzey has acted inappropriately in talking to funders about the new organization while he was still working for the Legal Defense Fund. Linzey confirmed to the Board that while he has had conversations with funders, that he has not disparaged the Legal Defense Fund during those conversations, but that he has had frank conversations about the state of the Legal Defense Fund. Linzey specifically responded to allegations that he had met with the Taitanchi Foundation over the summer, and stated that the meeting was a regular, annual meeting to build ties between the Foundation members and the Legal Defense Fund, and that neither the state of the Legal Defense Fund, nor the creation of a new organization, was ever mentioned during that meeting.

Board Member Belinsky asked several specific questions about conversations that Linzey has had with donors, and Linzey re-affirmed that even though the anti-disparagement clause in the proposed settlement agreement was not in place (because the settlement agreement had not been signed, and still hasn't been signed), that he had satisfied that standard of not disparaging the Legal Defense Fund with any current donors of the organization. Linzey stated that he had not yet asked existing CELDF funders specifically to fund the work of the Center for Democratic and Environmental Rights, but that as previously disclosed to the Board, that he intended to do so December 2nd and December 3rd. The Board felt that this was acceptable in light of dissolution.

Board Member Walls asked about the current state of Legal Defense Fund litigation, and about the number of cases that are active, and the work that would be necessary to close those cases out.

Brannen replied that the number is less than 10, and includes 5-6 cases that have been filed, and at least one promise to file a future case. He explained that dissolution would require us to either terminate those cases at their natural conclusions, or provide monies to the Community Rights Networks (CRN's) to continue them to their natural conclusion.

General discussion occurred about the reasons for dissolution, the status of the settlement agreement with Linzey, and the need to make sure that CELDF's work continues in some form through the state-based Community Rights Networks (CRN's). Discussion was had about the need to put together a full dissolution plan which would outline the specific steps to be taken towards dissolving the organization.

Board Member Walls mentioned that he remembered at least one prior Board meeting in which it was anticipated that the Legal Defense Fund would eventually phase itself out, to be replaced by the CRN's, but emphasized again the importance of not just dissolving, but making sure that dissolution was done with the best interests of the work in mind.

Board Member Belinsky announced her support for the Board Resolution and made a motion to approve the Resolution. The Motion was seconded by Board Member Wells who called for a vote.

Discussion then followed. Board Member Wells stated that the organization was in disarray and that while he didn't like the idea of dissolution generally, that he thought it was most likely the only choice at this point as the Board had worked on all of the other options, and each one had proven to be problematic.

Board Member Walls stated that he could get behind a plan for dissolution, as long as it included some provision for continuing the work of the Legal Defense Fund through the CRN's, and providing for the organizers to continue the work through those organizations.

Linzey was asked to explain how the CRN's are currently constituted, and whether there might be any issues in transferring monies to the CRN's. Linzey reviewed the status of the state CRN's and the National Community Rights Network (NCRN) for the Board, and cautioned that while the organizations hold tax-exempt status, that there would be some work needed to identify key people and prepare those organizations for a transfer of significant assets.

Board Member Belinsky called for a vote on the Motion.

VOTE:
>  Belinsky: Yes
>  Wells: Yes
>  Walls: Yes

>  Motion and Resolution were adopted by a unanimous, 3-0 vote.

Discussion was had about circulation of the Resolution for signature to all Board members and then back to Belinsky for keeping with the corporate records.

Linzey raised the need for a small, grammatical change in the Resolution, in which the word "negation" in paragraph #2 should read "negotiation." As the original Resolution had already been adopted, Linzey asked the Board to re-vote on the Resolution with the correction.

Board Member Belinsky made the Motion to re-adopt the Resolution. Board Member Wells seconded the Motion. Belinsky called for a vote.

VOTE:
>  Belinsky: Yes
>  Wells: Yes
>  Walls: Yes

>  Word correction and re-adoption of Resolution done by a unanimous, 3-0 vote.
(Adopted Board Resolution, with grammatical change, is Attachment #2 to these Minutes).

<u>Appointment of Executive Director</u>

Board Member Belinsky raised the issue of Brannen's resignation and the need for a new Executive Director. Various options were discussed, including the hiring of Karen Breslin – a current contract attorney with the Legal Defense Fund, the re-hiring of Linzey as the Executive Director, or the appointment of Board Member Belinsky as the Executive Director.

Discussion followed as to whether Breslin might be interested in the position, and Board members asked about her experience and whether she would be suitable, and whether she might accept the position.

Brannen was asked to contact Breslin about the possibility of her service in that position.

Board Member Walls expressed his preference that Linzey not be re-hired for the Executive Director position. Brannen stated that he was unwilling to accept the position again, even in a temporary status.

Discussion followed as to whether Belinsky would be willing to accept appointment as the Executive Director for a limited period of time. She agreed to accept appointment of that position for a limited period of time.

Board member Wells made a motion to approve Belinsky's appointment as Executive Director for a limited period of time. Board Member Walls seconded the motion and called for a vote.

VOTE:
    Belinsky: Yes
    Walls: Yes
    Wells: Yes

Appointment of Board Member Belinsky as Executive Director for a limited period of time approved unanimously, by a 3-0 vote.

Termination of Cheshire Law Group

Brannen raised the issue of CELDF's continued retainer of the Cheshire Law Group, and spoke generally about issues involving timeliness and general lack of specificity by the Law Group on questions asked of them by Brannen.

General discussion was had about how Cheshire Law Group had been hired, and the need for a law firm now that had specific experience with nonprofit dissolution issues. Discussion followed about how much money CELDF has paid the Law Group, and how much a final billing would be if the Law Group was terminated.

Board Member Belinsky made a motion that the Board should terminate its contract with the Cheshire Law Group. Board Member Wells seconded the Motion and called for a vote.

VOTE:
    Belinsky: Yes
    Walls: Yes
    Wells: Yes

Decision was made unanimously to terminate the Cheshire Law Group's contract, by a vote of 3-0.

Discussion was had about having Brannen or Belinsky contact the Cheshire Law Group to terminate the contract, and have the balance of monies (if any) from the initial retainer returned to the Legal Defense Fund.

Decision to Find a New Law Firm

Board Member Belinsky raised the issue of finding a new law firm that could be retained by the Board to assist with the dissolution process. She noted that the Dissolution Resolution has a paragraph enabling the Board to find a law firm to assist with the process.

Discussion followed about the Pittsburgh law firm that had originally been suggested to assist with Bylaws and other reviews. Board Member Belinsky offered to contact the law firm to see if they have expertise in dissolution matters.

Board Member Belinsky made a motion to approve the finding of a new law firm, and to negotiate a representation agreement with that law firm, if the law firm has experience with dissolution matters. Board Member Walls seconded the motion and called for a vote.

VOTE:
>Belinsky: Yes
>Walls: Yes
>Wells: Yes

Decision was made unanimously to authorize Board Member Belinsky to contact the Pittsburgh law firm (Mark Vuono), to determine if they have the desired experience, and to enter into a representation contract with them if they have the experience that the Board seeks.

Crafting an Internal Announcement About Board Decisions

Brannen raised the necessity of preparing an internal announcement about the Board decisions made at this Board meeting. Board Member Belinsky agreed to prepare that internal Board announcement, and to circulate to everyone at this Board meeting for input, comments, and editing.

There was agreement from everyone for Board Member Belinsky to prepare the statement, circulate the statement, and prepare a final announcement.

It was discussed that it was an impossibility to have that final Board announcement prepared and ready for circulation by tomorrow's (Thursday, November 21st) staff call, but that Board members would work expeditiously to approve a final statement.

Board Member Wells' Service on the Board of Directors

Board Member Belinsky stated that it would be helpful for all of the Board to continue their service on the Board through the dissolution process, and asked Board Member Wells whether he would be willing to stay on the Board at least through December 31, 2019

Board Member Wells agreed to stay on the Board through December 31, 2019.

Senior Counsel Linzey's Continued Employment

Linzey raised the issue that he had previously announced his resignation as Senior Counsel from the Legal Defense Fund, to be effective November 30th. He stated that he was willing to stay on longer, solely to assist with the dissolution process, but that he was fine either way – with resignation on November 30th, or with staying through December 31st to assist with the dissolution process, and that the Board just needed to decide if it wanted him to continue until the end of the year.

Discussion followed about how Linzey's knowledge of the organization, and his knowledge of the CRN's and infrastructure would be helpful to the dissolution process, and that he could work with Brannen to make sure that the process went smoothly.

Linzey stated that he would only accept the extension of the position if the Board understood that he, at the same time, would be building out a new organization, the Center for Democratic and Environmental Rights (CDER) and raising money for the operation of that new Center. Linzey declared that he wanted an explicit understanding from the Board that they found no conflict between working for an organization in dissolution to assist in that dissolution, and Linzey's continued work to create a new organization capable of carrying on some of the Legal Defense Fund's future work, and that some of that work would include raising money from former and current CELDF donors.

The Board discussed Linzey's terms, and there was general agreement that because the Legal Defense Fund had entered the dissolution process, that no conflict existed between Linzey's role as senior counsel assisting with the process, and his role in helping to create a new organization and doing everything necessary, including fundraising from prior and current CELDF donors, to build that new organization.

Board Member Belinsky made a motion to retain Linzey through December 31, 2019 as Senior Counsel to the organization, pursuant to the terms discussed regarding conflicts between his role with CELDF and his new role with CDER. The motion was seconded by Board Member Wells and called for a vote.

VOTE:
>       Belinsky: Yes
>       Walls: Yes
>       Wells: Yes

Motion to retain Linzey as Senior Counsel through December 31, 2019 was adopted unanimously, by a 3-0 vote.

Discussion was had about Board Member Belinsky notifying Stacey Schmader of Linzey's continued employment with the Legal Defense Fund.

Adjournment

Linzey made some final comments about the status of the organization, and thanked the Board members for all of their work. Linzey cautioned that with the decision to dissolve, there would be many difficult decisions to be made, and that Board members should gird themselves for a rough road ahead, especially with some of the staff.

Board members had a general discussion about the difficulty of the work, and how much they appreciated the way in which the existing Board had operated, and will continue to operate.

Board Member Belinsky made a motion to adjourn the meeting. Board Member Walls seconded the motion and called for a vote. There was unanimous agreement to adjourn the meeting.

Meeting adjourned at 7:51 p.m. EST.

###

# EXHIBIT FF



**COMMUNITY ENVIRONMENTAL LEGAL DEFENSE FUND**

P.O. BOX 360
MERCERSBURG, PA 17236

717-498-0054

INFO@CELDF.ORG

CELDF.ORG

## BOARD OF DIRECTORS' RESOLUTION
### Community Environmental Legal Defense Fund, Inc.

***WHEREAS,*** the Community Environmental Legal Defense Fund, Inc. is a nonprofit corporation incorporated under the laws of the Commonwealth of Pennsylvania, and the Legal Defense Fund has been doing business since 1995; and

***WHEREAS,*** the staff undermined the negotiation with Thomas Linzey to amicably depart from CELDF to form a new organization, and thereby defeated any chance that CELDF may have had to continue to work successfully on the same landscape as Linzey's new organization; and

***WHEREAS,*** the Directors desire that the organizing work of CELDF be carried out in the future by the State and National Community Rights Network, which entities were created by CELDF to expand and grow the organizing work, and to which the Directors desire to transfer assets to facilitate the transfer of the organizing work; and

***WHEREAS,*** pursuant to 15 Pa.C.S. §5972 ("Proposal of voluntary dissolution"), the Board of Directors of the Community Environmental Legal Defense Fund, Inc. resolves to initiate voluntary dissolution of the Community Environmental Legal Defense Fund, Inc. under the authority of 15 Pa.C.S. §5972(a) ("any nonprofit corporation that has commenced business may dissolve voluntarily in the manner provided in this subchapter and wind up its affairs"); and

***WHEREAS***, the Board of Directors of the Community Environmental Legal Defense Fund, Inc. has considered, and has elected to, initiate voluntary dissolution through this Resolution pursuant to 15 Pa.C.S. §5972(a)(1) ("voluntary dissolution shall be proposed by the adoption by the board of directors. . . of a resolution recommending that the corporation be dissolved voluntarily."); and

***WHEREAS***, pursuant to that statutory provision, the board of directors shall proceed to a winding up of the affairs of the Community Environmental Legal Defense Fund, Inc. under 15 Pa.C.S. §5975; and

***WHEREAS***, upon a majority vote of the Board of Directors pursuant to 15 Pa.C.S. §5974 (b) ("the resolution shall be deemed adopted by the corporation when it has been adopted by the board of directors"), this resolution shall be adopted and the Board of Directors shall move to winding up and settling the affairs of the nonprofit corporation pursuant to 15 Pa.C.S. §5975(a) ("the board of directors. . . of a nonprofit corporation that has elected to proceed. . . shall have full power to wind up and settle the affairs of the corporation"), and

***WHEREAS***, pursuant to statute, after completion of winding up and settling the affairs of the nonprofit corporation, the Board of Directors shall eventually file articles of

dissolution with the Commonwealth of Pennsylvania pursuant to 15 Pa.C.S. §5977 ("Articles of dissolution");

**THEREFORE**, the Board of Directors of the Community Environmental Legal Defense Fund, Inc. hereby resolves:

1. To initiate voluntary dissolution of the Community Environmental Legal Defense Fund, Inc. under the authority of 15 Pa.C.S. §5972;
2. To proceed to conduct a winding up of the affairs of the Community Environmental Legal Defense Fund, Inc. under 15 Pa.C.S. §5975;
3. To eventually file articles of dissolution for the Community Environmental Legal Defense Fund, Inc. pursuant to 15 Pa.C.S. §5977 when the winding up of the affairs of the Community Environmental Legal Defense Fund, Inc. is complete, and all other statutory provisions for dissolution have been satisfied; and
4. To expend all necessary resources to manage the winding up and dissolution period, including the hiring of a law firm to oversee that process, and the filing of any necessary legal actions to complete the dissolution process.

Agreed to and Adopted this _20th_ Day of _November_, 2019


_____

Tammy Belinsky, Board Chair

_____

Fred Walls, Board Member

_____

Ed Wells, Board Member